**Cheryl A. SMITH, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 81–0006–CV–W–4–3.**

United States District Court, W.D. Missouri, W.D.

Dec. 21, 1982.

Cathleen A. Shine, Harrisonville, Mo., for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

OPINION

ELMO B. HUNTER, District Judge.

This is an action by plaintiff, Cheryl A. Smith, for judicial review of a final decision of the Secretary of Health and Human Services (Secretary) brought pursuant to 42 U.S.C. § 405(g). Both parties have filed a Motion for Summary Judgment, together with supporting memorandums.

On August 1, 1977, plaintiff, a resident of Drexel, Missouri, filed her application to establish a period of disability as provided in § 416(i) of the Social Security Act (The Act—42 U.S.C. § 401 et seq.) and to obtain disability insurance benefits (S.S.I—§ 423 of the Act) claiming disability beginning July 22, 1977 for active rheumatoid arthritis. The claim was at first denied by the Social Security Administration (Social Security). A subsequent determination on February 21, 1978, revised and reversed the prior determination, and benefits were awarded based on a period of disability which began on July 22, 1977. On May 14, 1979, Social Security determined that plaintiff's condition had improved to the extent that she was able to perform substantial gainful work in April, 1979. This decision was reconsidered by Social Security at plaintiff's request of June 20, 1979, and reaffirmed on August 23, 1979.

On April 15, 1980, at plaintiff's request a hearing was held before an Administrative Law Judge who rendered a decision unfavorable to plaintiff's claim. His determination was that plaintiff was not under a disability, within the meaning of the Act at any time after April, 1979, and, therefore, that plaintiff was not entitled to a continuation of a period of disability, nor to disability insurance benefits.[1] On November 5, 1980, the Appeals Council of the Social Se-

---

1. Plaintiff did not actually draw supplemental security income as a result of non-disability factors.

curity Administration affirmed the Administrative Law Judge's decision that plaintiff's disability had ceased in April, 1979, and that her benefits ceased with the close of June, 1979, making that decision the final decision of the Secretary.

### Applicable Law

By law, the burden of proof rests upon a plaintiff to establish her entitlement to disability insurance benefits and SSI under the Social Security Act. Similarly, the burden of proving that her disability continues is on the plaintiff. See, *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981). If the Secretary's decision on the question of whether or not the disability continues is supported by substantial evidence, that decision is conclusive on the reviewing court: See, 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The reviewing court is charged with the duty of reviewing the record as a whole to determine not only whether the Secretary's decision is supported by substantial evidence but also whether the decision is a rational one in which the law is properly construed and applied. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1971); *Brand v. Secretary of Department of Health, Education & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### The Lay Evidence Before The ALJ

Plaintiff, who was not represented by an attorney, testified as follows: She was born November 17, 1947; is 32 years old (April 15, 1979) and possesses a 10th grade education. She has not worked since her period of disability began in July, 1977. From 1974 to 1977 she was employed as a meat packer at Oldham's Farm. That job required her to be either standing or walking "all day long", constantly bending, reaching and lifting 28 lb. boxes of meat and stacking it. It was hard, heavy labor. The temperature where she worked was freezing and below. From 1973 to 1974 she was employed at Peterson Manufacturing as an assembler of fog lights. Before that she worked as a radio parts assembler. Before that she was a machine operator working with a molding machine, inspecting and boxing plastic parts.

In 1979 she was hurting in her muscles and joints, mainly in her shoulders, knees and hips. The joints hurt "real bad" and she had difficulty in walking. Her condition worsened and in the winter of 1979 she couldn't brush her teeth, bend over the sink or do her regular housework. Her hands hurt and she couldn't walk; had to lay down; couldn't make bread, open jars or lift a skillet. She does do some limited housework. She drives her car about 30 miles a week to the grocery store. Eventually she was sent to Dr. Sisk who placed her on Amitriptyline for her pain. She has been taking it for approximately one year. She had a set back this winter (1979–1980) which still continues.

Plaintiff's mother testified in support of her daughter's statements, and particularly as to plaintiff's pain and disabilities.

### The Medical Evidence Before The ALJ

As earlier indicated, a medical team reviewed the evidence on October 6, 1977, for Social Security.[2] The medical team found against plaintiff's claim.

Approximately four months later, February 21, 1978, a medical team reconsidered plaintiff's claim bolstered by a medical report from each of three medical doctors— Trimble (1/13/78); Peterson (1/25/78); and

---

**2.** It is unclear just what evidence the medical team had before it on that date other than a medical report dated 9/28/77 from Dr. W.A. Slentz who noted that medical information indicated plaintiff had been diagnosed as having rheumatoid arthritis and that her drug program "has apparently controlled her symptoms relatively well." He concluded that she was unable to return to her usual and customary work as a meat packer; that she did have "the residual functional capacity to engage in work activity at this time" (9/28/77) and that she should be able to make an adjustment to a lighter type of work, such as price clerk, car checker, or assembler of small parts. Also before it were lab reports from Hickman Mills Clinic including findings of J.E. Spurney, M.D. of October 4, 1977.

Spurney (1/3/78).[3] This team revised and reversed the determination of October 6, 1977. This medical team report found and stated:

> The W/E alleges that she is unable to work because of rheumatoid arthritis. The medical information indicates that she does have arthritis affecting multiple joints. She has pain and some limitation of motion and is beginning to have some mild changes in some of the joints. She cannot be exposed to damp or extremely cold weather and she cannot do frequent step or stair climbing. She could not do continuous gripping or twisting with either hand and cannot reach over her shoulders to retrieve objects frequently or to retrieve any weighted objects above 1 or 2 pounds. Her general lifting would be limited to about 5 pounds. This medical information indicates that she is limited to less than sedentary type work activity; therefore, the review team decides that she is entitled to a period of disability beginning 7/22/77.

On June 1, 1979, plaintiff was notified that Social Security had reviewed additional medical evidence which showed she had become able to perform substantial gainful work in April, 1979. The June 1, 1979, medical team review apparently based primarily on an April 25, 1979, examination of plaintiff by H. Joe Pryor, M.D.,[4] concluded: "Although the claimant does have documented rheumatoid arthritis, she is asymptomatic *at this time.* (Emphasis added) It does not appear that claimant has any physical or mental restrictions which prevent substantial gainful activity. It appears the claimant has no more than a slight impairment at this time. The claim is therefore ceased in 4–79 and a referral to VR is made."

After the June 1, 1979, adverse-to-plaintiff decision, Charles Sisk, M.D., reported he had examined plaintiff in March and July, 1979. He stated she showed no objective evidence of arthritis; that tests showed a borderline rheumatoid factor; and diagnosed fibrositis to which she had achieved "a fairly good response" with Amitriptyline.

On August 23, 1979, another medical team after reviewing for Social Security the evidence to that approximate date stated, "the total evidence would indicate no significant impairment or impairments on medical consideration alone."

Finally, and on April 14, 1980, Dr. Sisk submitted another letter-statement accompanied by a medical journal article on the fibrositis syndrome. Dr. Sisk repeated his diagnosis for fibrositis and noted the medical journal article's contents. He concludes that "although there is no laboratory test or X-rays indicating the severity of this process it can be quite disabling. I believe this condition justifies complete disability in this patient."

### Discussion

■ As earlier noted, the Secretary's decision that plaintiff failed to establish that her disability continued after April, 1979, is

---

3. Chronologically, the medical evidence of record through February 10, 1978, which predated the February 11, 1978, report includes: (1) J.E. Spurney, M.D., report and lab reports from Hickman Mills Clinic; later reports included those of David Trimble, M.D., in the form of clinical notes for three dates from November, 1977, through January, 1978; Gerald Petersen, M.D., who examined plaintiff on January 25, 1978, in regard to rheumatoid arthritis; S.M. Gardner, M.D., who evaluated plaintiff on February 10, 1978.

4. Dr. Pryor performed a musculoskeletal examination of plaintiff. He concluded that neuromuscular examination and palpatation of peripheral pulses were unremarkable and that the musculoskeletal and neuromuscular examination were normal. "At this time, there is no objective evidence of synovitis or joint restriction * * * Because there are no musculoskeletal and joint abnormalities at this time, she is suffering no functional restrictions. She can be expected to have increased constitutional symptoms with exposure to cold or if she becomes fatigued. At this time, the only restrictions I would recommend would be she eliminate exposure to cold and be allowed to have one hour of rest in the mornings and afternoons. If, in the future she indeed does develop objective evidence of synovitis on a physician's examination or other evidence of joint deformity, then further restrictions might be necessary."

conclusive upon the Court if it is supported by substantial evidence on the record as a whole. 42 U.S.C. 405(g); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981).

After a person has been determined to be disabled, the Secretary may review the individual's status to determine whether the disability continues. 42 U.S.C. § 423; 20 C.F.R. 404.1528.[5] The burden of proof on that issue (continuing disability) remained with plaintiff in the instant case because the Administrative Law Judge determined on medical grounds alone that plaintiff's impairment was no longer severe.[6]

Careful review of the record as a whole reveals there is substantial evidence to support the ALJ and the Secretary's decision that plaintiff's impairment is no longer severe, and that, hence, she is able to engage in substantial gainful activity. Dr. Pryor's examination of April 25, 1979, resulted a medical report which stated: "I am suspicious that she may have early or palindromic rheumatoid arthritis .... Because there are no musculoskeletal and joint abnormalities at this time, she is suffering no functional restrictions."[7] And as earlier stated, on June 1, 1979, the review team, including its two medical doctors found:

The claimant has been receiving disability benefits due to rheumatoid arthritis. Current medical evidence from H. Joe Pryor, M.D. Physiatrist, (5–9–79), indicate the claimant has no restrictions at this time. Current examination reveals the claimant's musculo-skeletal and neuromuscular examination is within normal limits. Examination reveals the claimant has no tenderness, heat, or swelling about any of the joints. The claimant has no limitation in the range of motion in any of her joints, extremities or spine at this time. Current rheumatoid allegation tests continue to be positive, and her sedimentation rate also is mildly elevated. Although the claimant does have documented rheumatoid arthritis, she is asymptomatic at this time. It does not appear the claimant has any physical or mental restrictions which prevents substantial gainful activity. It appears the claimant has no more than a slight im-

---

5. Upon request and reasonable notice the recipient is required to present himself for and submit to examinations or tests and submit the medical reports and other relevant evidence as provided for in 20 C.F.R. 404.1527; 42 U.S.C. § 423(d)(5).

6. The Administrative Law Judge found and stated, "The claimant's disability did, in fact, cease in April, 1979, when she was shown to have no functional restrictions as a result of her rheumatoid arthritic disease or other conditions. Whether or not a claimant is or is not under a disability is not determined by the existence of one or more medical conditions. It is only when these medical conditions functionally restrict the claimant from performing all substantial gainful activity that they are considered disabling. In the instant case, although claimant carries diagnosis of rheumatoid arthritis and fibrositis, neither of the above is shown to restrict claimant's functional ability to walk, sit, stand, lift, and carry, or use her upper and lower extremities in work activities. The claimant's only work-related restrictions comes from a consultant who indicated that she should not be exposed to cold temperatures and should be allowed to rest one hour in the morning and one hour in the afternoon. It is the undersigned's (the A.L.J.) opinion that the above restrictions constitute a slight impairment which does not significantly restrict the claimant's ability to perform work-related activities consistent with her age, education, and vocational background."

7. "FINAL COMMENT: Musculoskeletal and neuromuscular examination is normal. At this time, there is no objective evidence or synovitis or joint restriction. Her history certainly is suspicious for early rheumatoid arthritis as she describes early morning stiffness, intermittent fever and night sweats, arthralgias and myalgias. In our laboratory, the rheumatoid agglutination test was positive at 1–80 titer, her Sed. Rate was mildly elevated at 21 (normal less than 15). I am suspicious she may have early or palindromic rheumatoid arthritis on the basis of somewhat typical constitutional subjective symptoms and the rheumatoid agglutination test. Because there are no musculoskeletal and joint abnormalities at this time, she is suffering no functional restrictions. She can be expected to have increased constitutional symptoms with exposure to cold or if she becomes fatigued. At this time, the only restriction I would recommend would be she eliminate exposure to cold and be allowed to have one hour of rest in the mornings and afternoons. If, in the future she indeed does develop objective evidence of synovitis on a physician's examination or other evidence of joint deformity, then further restrictions might be necessary.

pairment at this time. The claim is therefore ceased in 4–79 and a referral to VR is made.

Thus, we come to the final question, how is a less-than-substantial (slight) impairment to be treated under the Social Security Act and the Regulations thereunder that Congress mandated the Secretary to promulgate. The Secretary in 20 C.F.R. Section 404.1520 provided:

"If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a *severe* impairment and are, therefore, not disabled." (Emphasis added.)

And the Eighth Circuit in *McCoy v. Schweiker,* 683 F.2d 1138, 1142, stated:

"If a *severe* impairment is not found, the claimant must be found not disabled." (Emphasis added.)

Accordingly, the Secretary has found plaintiff to be not disabled.[8]

To the undersigned judge, whether or not in fact at the time of the A.L.J.'s decision plaintiff could engage in substantial gainful activity is debatable.[9] In view of the statutorily limited review which is permitted to the District Court, the Court may not substitute its findings for those of the Secretary if there is substantial evidence on the record as a whole to support the Secretary's findings. This Court is unable to say the supporting evidence is not substantial or does not have probative value. Nor on this record can this Court conclude that the conclusions reached were not rational, substantially supported and indicative of the law being properly applied. See, *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 71

S.Ct. 456, 95 L.Ed. 456 (1974); *Ferran v. Flemming,* 293 F.2d 568 (5th Cir.1961); *Baith v. Weinberger,* 378 F.Supp. 596 (E.D. Pa.1974). Plaintiff is, of course, free to make a new claim if she concludes her condition has changed for the worse since the A.L.J.'s ruling in this case.[10]

Accordingly, the decision of the Secretary is affirmed and the Secretary's summary judgment motion is granted.

IT IS SO ORDERED.

---

**8.** Plaintiff's problem in the instant case lies in the fact that although the Secretary has found that plaintiff was no longer under a disability within the meaning of the Act, at any time after April, 1979, and therefore not entitled to a continuation of a period of disability, her evidence that she is unable to return to her prior very strenuous employment is of no assistance to her. Even so, the Secretary's basic finding of no present disability appears to be dispositive of her claim.

**9.** Obviously little weight was given by the A.L.J. and Secretary to Dr. Sisk's latest letter and its enclosure concerning fibrosis. However, it is the A.L.J. and Secretary's right to decide the weight and value of conflicting evidence.

**10.** It is noteworthy that both Dr. Pryor's report and that of June 1, 1979, by the Review Team recognizes that plaintiff's condition and their medical opinion are based on her condition at the time of their examination of her, and that it could worsen in the future.