Cheryl A. SMITH, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 83–1120.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1983.

Decided March 7, 1984.

Cathleen A. Shine, Harrisonville, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for appellee; Paul P. Cacioppo, Regional Atty., Region VII, Dept. of Health and Human Services, Kansas City, Mo., of counsel.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Cheryl Smith appeals from an order of the District Court, 559 F.Supp. 639, affirming the decision of the Secretary of Health and Human Services denying disability benefits and supplemental security income under Title II of the Social Security Act, 42 U.S.C. §§ 401–33 and Title XVI, 42 U.S.C. §§ 1381–83c. Smith argues that the decision of the Secretary is not supported by substantial evidence on the record as a whole. She contends that the evidence conclusively established her inability to perform her previous occupation as a meat packer and therefore that it was incumbent upon the Secretary to present evidence of other jobs in the economy that she could perform, a burden that the Secretary made no attempt to satisfy. She also contends that the ALJ did not give adequate consideration to her complaints of pain. In addition, Smith argues that the ALJ failed to develop fully and fairly the evidence at the administrative hearing and that the district court should have remanded the case to the ALJ for the consideration of new evidence. We reverse and remand for further proceedings.

### Statement of the Case

Smith initially was granted disability benefits and supplemental security income on February 21, 1978 based on a period of disability which began on July 22, 1977. As a result of a continuing disability investigation, the Social Security Administration (SSA) concluded that Smith's disability ended in April 1979 because her condition had improved and she was able to do substantial, gainful work. After a hearing in April 1980, the ALJ found that Smith was not entitled to disability benefits and supplemental security income because she was not disabled. Smith was not represented by an attorney at the hearing.

The ALJ concluded that Smith's disability ended in April 1979 when she was shown to have no functional restrictions such as the inability to walk, sit, stand, or lift and carry as a result of her rheumatoid arthritic disease or other conditions. Restrictions limiting Smith's exposure to cold and mandating an hour of rest in the morning and in the afternoon were found by the ALJ to constitute only a "slight impairment." Because the impairment was slight, there was no significant limitation on Smith's ability to perform tasks consistent with her age, education, and vocational background.

Smith exhausted internal appeals within the SSA. On petition for review, the District Court granted summary judgment in favor of the Secretary of Health and Human Services on the ground that there was substantial evidence to support the administrative finding that Smith was not disabled.

### Statement of the Facts

Smith was born on November 17, 1947. She has a tenth grade education but no vocational training. Her work experience includes meat packing, 1974 to 1977; assem-

bling fog lights, 1973 to 1974; assembling radio parts, 1972; and machine operator, 1967 to 1968. As a meat packer, Smith packed frozen meat with her bare hands at room temperatures of freezing and below. She was either standing or walking all day long, constantly bending, reaching, lifting and carrying boxes of frozen sausage weighing twenty-eight pounds per box a distance of fifteen feet. In her job as a fog lights assembler, she worked seated on a bench line with occasional bending and reaching. The radio parts assembler job also involved sitting with occasional bending and reaching and lifting of small parts.

Smith testified to pain in the muscles or joints in her shoulders, knees, hips, hands, and back. Although her muscles or joints did not swell, Smith found it difficult to walk. She stated that she could not bend over the sink to brush her teeth, bake bread, open jars, or lift a skillet. She was taking medication for the pain. During the winter, particularly that of 1979, her hands and back hurt so much she hardly could do anything. Sitting up for an hour was causing problems. When she bent over she had trouble straightening up. She was doing some housework such as vacuuming and cooking. Her two sons, however, were helping with any lifting such as lifting laundry. Her sons also were doing all the yard work. At the time of the hearing, she was driving her car approximately 30 miles per week, which was one round trip to the grocery store. She was driven to the hearing by her mother because she was living 40 to 50 miles from Kansas City. Smith could no longer go fishing with her boys. She finds that she becomes easily fatigued. Smith's mother stated that she had seen Smith in so much pain that Smith had taken six aspirin and that Smith limps when her hips hurt.

Smith initially was awarded disability benefits after a medical team reconsidered an earlier denial and examined the medical reports of W.A. Slentz, M.D., Internist; David P. Trimble, Jr., M.D.; Gerald D. Peterson, M.D.; and Joseph E. Spurney, M.D. After performing personal examinations, each of these doctors reported positive results on rheumatoid agglutination tests. At one point, there was evidence of acute tendenitis in Smith's left wrist and of pain and swelling in the right wrist and right thumb. All of the doctors noted her complaints about widespread aches and pains, particularly pain in the left hip and left knee. There was general agreement that she had no appreciable swelling of any joints and that she had no loss of range of motion. In addition, Dr. Peterson reported that Smith had a mild loss of gripping in both hands and that she was unable to squat. After his personal examination, Peterson concluded:

> If this lady were to be employed she should not be exposed to damp or extremely cold environments. She could not do frequent step or stair climbing. She could not do continuous gripping or twisting with either hand. She cannot reach over her shoulders to retieve [sic] objects frequently or to retrieve any weighted objects above 1–2 pounds. Her general lifting should be limited to about 5 pounds. She should not be expected to retrieve objects from the floor weighing more than 1–2 pounds and this should not be on a frequent basis. Her walking and standing should be limited to 2–3 hours per day. She could probably do only limited typing or keypunch activities.

Trial Transcript (Tr.) at 114.

D.F. Coburn, M.D. and S.M. Gardner, M.D., two medical consultants, performed residual functional capacity evaluations. Although they agreed that Smith could sit for eight hours per day, both recognized limitations on her ability to stand, walk, bend, squat, crawl, and climb. They also reported some limitations in her ability to use her left and right upper extremities and hands.

The medical team which awarded benefits relied primarily on the opinion expressed above by Dr. Peterson and added "[t]he medical information indicates that she does have arthritis affecting multiple joints. She has pain and some limitation of motion and is beginning to have some mild

changes in some of the joints." Tr. at 54–55.

The SSA's decision to discontinue benefits because the disability ended in April 1979 was based upon records from a visit by Smith to Mehernaz Irani, M.D., in Arizona, upon a personal examination by H. Joe Pryor, M.D., after referral by the SSA for physiatric evaluation, and upon the report of Charles Sisk, M.D., Smith's treating physician. Smith visited Irani in February, 1979 for a "flare-up of rheumatoid arthritis." Tr. at 123. Medications were prescribed. Dr. Irani noted that Smith had a stiffness of grip, but no deformities in her big joints and a full range of motion.

Dr. Pryor examined Smith on April 25, 1979. He noted that she walked slowly and gingerly as if it hurt her legs to walk. After setting out Smith's history, Dr. Pryor reported that Smith complained that her symptoms were worse in the morning with stiffness in her hands, arms, and hips than later in the day when she felt pretty good. Smith also suffered from recent shoulder, neck, and arm pain. She would awaken at night with elbow stiffness. Dr. Pryor reported, in part, as follows:

> [T]here is no objective evidence of synovitis or joint restriction. Her history certainly is suspicious for early rheumatoid arthritis as she described early morning stiffness, intermittent fever and night sweats, arthralgias and myalgias.... I am suspicious she may have early or palindromic rheumatoid arthritis on the basis of somewhat typical constitutional subjective symptoms and the rheumatoid agglutination test. Because there are no musculoskeletal and joint abnormalities at this time, she is suffering no functional restrictions. She can be expected to have increased constitutional symptoms with exposure to cold or if she becomes fatigued. At this time, the only restriction I would recommend would be she eliminate exposure to cold and be allowed to

have one hour of rest in the mornings and afternoons.

Tr. at 130.

On August 15, 1979, Dr. Sisk reported that he had seen Smith three times since her first visit in March, 1979. According to Dr. Sisk, Smith had a "3 year history of migratory polyarthralgias without joint swelling except for diffuse swelling of hands—marked morning stiffness. Treated by other physicians as RA but poor response. Borderline rheumatoid factor results in past." Tr. at 93. He further stated, "No objective evidence of arthritis," "Severely tender" over various muscles and joints. Tr. at 94. Laboratory studies showed a borderline rheumatoid factor. X-rays of the hands were negative. He diagnosed fibrositis.[1]

Dr. Sisk submitted another letter on April 14, 1980 accompanied by a medical journal article on the fibrositis syndrome. In repeating his fibrositis diagnosis, Dr. Sisk recognized fibrositis as a "clinical entity." Tr. at 133. He concluded that "[a]lthough there is no laboratory test or X-rays indicating the severity of this process it can be quite disabling." *Id.* Dr. Sisk believed that Smith was completely disabled from the fibrositis. The article submitted by Dr. Sisk listed symptoms for fibrositis, including "chronic aching, a non-restorative sleep pattern with marked morning stiffness and fatigue," EEG changes, and tenderness in various parts of the body. Tr. at 137.

### Discussion

■ The ALJ's findings of fact regarding entitlement to disability benefits are conclusive if supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). This Court also reviews the benefits decision to determine if there has been an error of law. *Nettles v. Schweiker,* 714 F.2d 833 (8th Cir.1983). Substantial evi-

---

1. Fibrositis is defined as "An overgrowth, accompanied by inflammation, of the white fibrous tissue of the body, especially of the sheaths of the muscle and other layers of fascia, accompanied by soreness and stiffness.

Also known as muscular rheumatism." Brief for Secretary at 12 n. 3 (quoting 1 *Schmidt's Attorney's Dictionary of Medicine* (Matthew Bender)).

dence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Review under this standard is more than a search for the existence of evidence supporting the finding. As Justice Frankfurter pointed out in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See Brand v. Secretary of HEW,* 623 F.2d 523, 527 (8th Cir.1980). Our review of the administrative record convinces us that it does not adequately support the ALJ's decision. Because Smith established that she could not return to her former job, the ALJ should have shifted the burden of proof to the Secretary to show the existence of other jobs in the economy that she could perform. In evaluating Smith's disability, the ALJ also erred by failing to consider evidence of Smith's pain.

█ This circuit has recognized that in a disability benefits termination proceeding, as in an initial benefits proceeding, the burden of persuasion is on the claimant to show that he or she has a disability and is entitled to benefits. *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981). In *Weber,* this Court acknowledged that the Secretary need not show improvement in order to terminate benefits, but could show that the condition was less serious than was at first supposed. Thus, the earlier determination does not bar further proceedings by the Secretary. A claimant is not guaranteed the right to continuing disability benefits without producing evidence that the disabling condition continues. The Court also indicated, however, that "[i]t would be wrong for the Secretary to terminate an earlier finding of disability on no basis other than his reappraisal of the earlier evidence." *Weber, supra,* 640 F.2d at 178–79 (quoting *Miranda*

*v. Secretary of HEW,* 514 F.2d 996, 998 n. * (1st Cir.1975)).

Under the statutory definition of disability the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). This physical or mental impairment must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work." *Id.* at § 423(d)(2)(A).

The ALJ specifically found that Smith had been diagnosed as having "rheumatoid arthritis and fibrositis." Tr. at 10. Apparently the ALJ chose to believe Dr. Sisk's comment that fibrositis was a recognized "clinical entity" which could be a medically determinable physical impairment. *Id.* at § 423(d)(3); *Brand, supra.*

Smith clearly established that she cannot return to her former job as a meat packer. Early in 1978, Dr. Peterson advised that Smith should no longer work in the cold. He also believed that her general lifting ability should be limited to five pounds and that she should not frequently lift objects from the floor weighing more than one to two pounds. Dr. Pryor, the SSA consulting physician on whose 1979 report the ALJ specifically relied, concurred with the opinion that Smith should eliminate exposure to cold. He added that she should be allowed to rest one hour in the morning and one hour in the afternoon.

Needless to say, those restrictions rule out a job in which Smith packed frozen meat with her bare hands at room temperatures of freezing and below. In one eight-hour day, she would lift 50,000 to 70,000 pounds of meat. Smith and two other women would pack the meat, which came to them at a rate of sixty pounds per minute, into twenty-eight-pound boxes, lift and carry these boxes fifteen feet, and stack them onto skids for transportation to semi-trailer trucks. Such working conditions are obviously incompatible with Smith's physi-

cal limitations as agreed upon by the examining physicians. Because Smith established the inability to return to her former job as a meat packer, the ALJ should have shifted the burden of proof to the Secretary to come forward with evidence that Smith had the requisite residual functional capacity and vocational qualifications to do other jobs which exist in the national economy. *See, e.g., Baugus v. Secretary of HHS,* 717 F.2d 443 (8th Cir.1983); *O'Leary v. Schweiker,* 710 F.2d 1334 (8th Cir.1983).

■ The inadequacy of the ALJ's findings in regard to Smith's complaints of pain and limitation of motion and to the medical reports in evidence is an independent ground compelling reversal. This Court remains firm in requiring the ALJ to give serious consideration to subjective evidence of pain. *See, e.g., Baugus, supra; Nettles, supra.* The ALJ may not disregard subjective evidence concerning pain merely because it was not fully corroborated by the objective evidence. *See, e.g., Streissel v. Schweiker,* 717 F.2d 1231 (8th Cir.1983). Although the ALJ may disbelieve the claimant's subjective complaints of pain based on inconsistencies in the testimony and other circumstances in the case, the ALJ may not circumvent these principles regarding pain "under the guise of a credibility finding." *Simonson v. Schweiker,* 699 F.2d 426, 429 (8th Cir.1983). We have recognized that "[i]t is simply insufficient for the ALJ to suggest in conclusory fashion" that complaints of pain are not credible. *Streissel,* 717 F.2d at 1233.

In Smith's case the ALJ did not purport to make any credibility findings. The ALJ merely recapitulated Smith's hearing testimony. The ALJ's failure to make any specific findings accepting or rejecting Smith's testimony suggests that it was ignored. There is no indication that the ALJ thoughtfully considered Smith's testimony that she suffered pain or that the ALJ endeavored to give the testimony its appropriate weight.

■ The ALJ's findings in regard to the medical reports in evidence are a matter of additional concern, particularly as these reports relate to Smith's evidence of pain. The ALJ specifically concluded that Smith suffered the medically determinable ailments of rheumatoid arthritis and fibrositis. As with Smith's testimony, however, the ALJ merely summarized the medical reports of Dr. Pryor, the SSA consulting physician, and Dr. Sisk, the treating physician. The ALJ did not attempt to reconcile these reports or to evaluate their content as it supported or contradicted Smith's testimony concerning pain.

The District Court noted that "[o]bviously little weight was given by the A.L.J. and Secretary to Dr. Sisk's latest letter and its enclosure concerning fibrosis [sic]. However, it is the A.L.J. and Secretary's right to decide the weight and value of conflicting evidence." Designated Record (D.R.) at 53 n. 1. Although we agree with the District Court's statement of the law, we are unwilling to impute to the ALJ credibility findings that he did not make. Dr. Sisk's diagnosis of fibrositis offered a medical explanation consistent with Smith's testimony about pain. It also explained why she did not have the swelling in her joints that would be symptomatic of active rheumatoid arthritis. In addition, the medical reports of all examining doctors, including those at the earlier determination, reported Smith's complaints of widespread pain. Dr. Pryor, for example, noted Smith's complaints and observed that she walked as if her legs hurt. Moreover, Dr. Pryor, despite concluding that Smith had "no objective evidence of synovitis or joint restriction," reported that she described "early morning stiffness, intermittent fever and night sweats, arthralgias and myalgias" and restricted her exposure to cold and recommended an hour of rest in the mornings and afternoons. Tr. at 130. The medical reports tend to support Smith's claims of chronic pain. We find the ALJ's minimal findings regarding the existence of a severe impairment inadequate.

We remind the Secretary that, in evaluating the medical evidence, consideration should be given to the qualifications of each physician, the fairness of each physician in evaluating Smith's complaints of pain and

her physical impairment, the thoroughness of the examination and the physician's reliance on clinical and diagnostic aids. *Brand,* 623 F.2d at 527 n. 6. *See also O'Leary, supra* (before the ALJ concludes that the claimant can perform sedentary work, he must attempt to reconcile the medical reports of the treating physician with those of the consulting physician or he must direct interrogatories to each physician to obtain a more substantiated opinion of the claimant's capabilities).

The level of inquiry reached by the ALJ did not involve consideration of other jobs that Smith might be able to perform. Because we are remanding this case, we remind the Secretary that if Smith presents evidence of a disabling nonexertional impairment such as pain, or of a combination of exertional and nonexertional impairments, expert vocational testimony is necessary. *McDonald v. Schweiker,* 698 F.2d 361, 365 (8th Cir.1983); *Nicks v. Schweiker,* 696 F.2d 633, 636 (8th Cir.1983); *McCoy v. Schweiker,* 683 F.2d 1138, 1146–48 (8th Cir. 1982). On the other hand, expert testimony is not required if Smith's residual functional capacity, age, education, and work experience fit a profile listed in the SSA Medical-Vocational Guidelines. *See* 20 C.F.R. Section 404, Subpart P, Appendix 2 (1983); *McCoy, supra.*

The judgment of the District Court is reversed and the case is remanded to the District Court with directions to remand the claim to the Secretary for a new hearing.