**Edward D. HON, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83–1123–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

May 14, 1984.

Patrick B. Starke, Cochran, Tyree, Oswald, Barton & McDonald, Blue Springs, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant; Paul P. Cacioppo, Regional Attorney, Region VII, Dept. of HHS, Kansas City, Mo., of counsel.

MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

I.

This Social Security case pends on cross motions for summary judgment. This Court must therefore review the final decision of the Secretary of Health and Human Services denying plaintiff's entitlement to a period of disability and disability insurance benefits. Jurisdiction is exercised pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below the decision of the Secretary is reversed and the plaintiff's motion for summary judgment will be granted.

Plaintiff had the burden of showing that he was unable to engage in any substantial gainful activity by reason of a

medically determinable physical and/or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Once plaintiff established, however, that he was unable to perform his past relevant work (ALJ finding number 5), the burden shifted to the Secretary to prove that there is other substantial gainful activity that plaintiff can perform. *Nunn v. Heckler*, 732 F.2d 645 at 649 (8th Cir.1984); *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir.1983). In reviewing the Secretary's denial of Social Security benefits we must decide whether substantial evidence on the record as a whole supports the Secretary's decision. 42 U.S.C. § 405(g); *Baugus v. Secretary of Health & Human Services*, 717 F.2d 443, 445–46 (8th Cir.1983). In this case, it does not.

## II.

There is no dispute that plaintiff met the special earnings requirements of the Act, that he has not engaged in substantial gainful activity since February 5, 1982, and that plaintiff is unable to perform his past relevant work as a draftsman (Tr. 17; findings 1, 2, 5). Plaintiff asserts, however, that the Administrative Law Judge (ALJ) (1) erred in framing a hypothetical question to the vocational witness, (2) ignored the effect of plaintiff's nonexertional impairments, and (3) improperly relied upon Appendix 2, Subpart P, Regulations No. 4 (the "grid") to direct a decision that plaintiff is not entitled to a period of disability or disability insurance benefits. (Pl.Sug. at 7, 10; Tr. at 18).

On August 31, 1983, the Appeals Council denied plaintiff's request for a review of the ALJ's decision of April 16, 1983. The parties agree that the ALJ's decision, as affirmed by the Appeals Council, constitutes the final decision of the Secretary.

## III.

■ The ALJ's critical factual errors are contained in the following findings:

6. Considering claimant's exertional limitations only, he has the residual functional capacity for a wide range of sedentary work (20 C.F.R. 404.1567).

7. The level of work claimant can do in light of his exertional limitations is *not substantially affected* by his nonexertional limitations.

Tr. 17, 18 (emphasis added). These findings simply were not supported by the evidence before the ALJ. The ALJ conceded that plaintiff is blind in the right eye, has severe hypertension and diabetes mellitus and has proliferative hemorrhage of the left eye, which has a visual acuity of no better than 20/40 and may well have deteriorated to 20/80 in a nine-month period. Tr. 17; 93.

Dr. Ziemianski, a treating ophthamologist, wrote that plaintiff was unable to function as a draftsman because of "the distortion in his vision." Tr. 165. Dr. VerDught treated plaintiff for diabetes, high blood pressure, headaches and swelling of his leg. Tr. 149. When plaintiff applied for disability, the State's interviewer noted "Claimant had to adjust his head up and down and to the side to see the signature line." Tr. 133. The plaintiff testified, under oath, that he could not perform even a sedentary gross type job rather than a fine type manipulative job on a daily basis because anything that requires a period of concentration of over half an hour produces headaches, Tr. 44, and that lights in front of his eyes give "a cast to everything" so that it is "like a foggy shower." Tr. 59.

Plaintiff testified that his treating physician advised him to lie down when concentration in using his one remaining eye causes fatigue, that he spends an average of three to four hours a day in bed, and that his doctor had told him not to lift more than five pounds. Tr. 45, 46, 50. Plaintiff's wife corroborated his testimony in regard to plaintiff's restricted activities at home. Tr. 93. Dr. VerDught testified at the hearing that he had treated plaintiff for about 2½ years for diabetes related complications including neuropathy, mild back vascular disease and kidney function of approximately 30–40 percent of normal.

Tr. 68–70. Most importantly, Dr. Ver-Dught testified that any type of activity which would increase either the "venus or arterial" pressure in plaintiff's right eye could rupture the blood vessels in the eye, causing bleeding and "he could go blind." Tr. 71:

BY ATTORNEY:

Q: And what could bring that on?

A: Any type of thing ... from lifting, from straining ... even ... an excessively hard bowel movement ....

Q: I see.

A: And so that's why the restrictions are so stringent.

Q: One of the definitions for sedentary work is involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like—files, ledgers and small tools. In your opinion, would it be safe for Ed to engage in that kind of activity?

A: I really don't think so.... He cannot bend, he cannot stoop, he cannot [sic] his head really below his shoulder level in other words, waist level in doing so, you increase the pressure and that then increases the risk. He cannot strain or lift up high again, because of ... a significant risk.

Tr. 72–73. Under persistent questioning by the ALJ, Dr. VerDught agreed that plaintiff could sit at a desk sorting only large objects not requiring fine manipulation "because of the lack of vision" as long as they were "a maximum of 10 pounds and generally less than that." Tr. 77.

The ALJ posed questions to a vocational psychologist, Dr. King. Initially Dr. King responded: "I have some feeling that *perhaps* there are some sedentary jobs [plaintiff] might be able to do." Tr. 89 (emphasis added). The ALJ asked a four page (Tr. 93–96) hypothetical question which ignored any mention of plaintiff's headaches or pain and directed Dr. King to "[a]ssume that there is no evidence whatsoever that would contraindicate the ability to sit for six of 8 hours." Tr. 95. The vocational expert stated "I should think, yes there are some [sedentary jobs plaintiff can perform]." Tr. 97. After discussing several job categories and striking two, the ALJ continued:

Q: Assume all of the same as in the prior question, both from a function and restriction standpoint but add one thing to assume that the individual in question becomes extremely fatigued 30 to 60 minutes after undertaking any consequential task. Quite often will be caused to have severe headaches above the left eye ... and needs to lie down on a regular basis daily; ... three to four ... hours during the afternoons usually he spends down either asleep or at least down in bed. If I asked you to assume that that was a[n] absolutely required part of his daily lifestyle, ... would you feel that he'd be able to perform any of this [sedentary] work?

A: I'd have the greatest skepticism.

Tr. 100–01.

The evidence before the ALJ clearly established that plaintiff *is* significantly affected by his non-exertional limitations and does not have the residual functional capacity for a *wide range* of sedentary work. We conclude, therefore, that ALJ findings 6 and 7 are not supported by substantial evidence on the record as a whole.

### IV.

In reaching a decision that plaintiff was not disabled, the ALJ twice failed to follow the law of this circuit. First, the ALJ ignored a key portion of plaintiff's testimony in regard to nonexertional impairments of headache and fatigue without making any finding as to plaintiff's credibility. This practice was held to be an independent ground compelling reversal in the recent case of *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984). In that case, the Court of Appeals stated that the ALJ's failure to make any specific findings accepting or rejecting plaintiff's testimony

"suggests that it was ignored." The Court noted there was no indication that the ALJ thoughtfully considered plaintiff's testimony regarding pain or that the ALJ "endeavored to give the testimony its appropriate weight." *Id.* That is the situation in this case.

■ Defendant's reply brief, at 1, argues that the ALJ's function as a weigher of evidence permitted him to pose hypothetical questions containing different facts and to reach a decision based on the vocational expert's varying answers. Defendant also relies on Dr. VerDught's testimony and that of plaintiff in its allegation that the ALJ "could reasonably find" that plaintiff was not disabled because he had the residual functional capacity to perform sedentary work. Reply Brief at 2–3. The law is clear, however, that hypothetical questions posed to vocational experts must precisely set out all of the claimant's impairments. *O'Leary, supra,* at 1343; *see also Ledoux v. Schweiker,* 732 F.2d 1385 at 1388 (8th Cir.1984). Thus the ALJ was not free to pick and choose. A response to a defective hypothetical question does not constitute substantial evidence. *Id.*

In *Nunn v. Heckler,* 732 F.2d 645 at 648 (8th Cir.1984), the Court of Appeals reiterated its often stated warning that although the ALJ may reject testimony on the basis of credibility, such rejection must be supported by legitimate reasons for disbelief and cannot be used as a guise for circumventing the rule that objective evidence is not needed to support subjective evidence of pain. In this case plaintiff testified that use of his remaining eye is impeded by blurring and the rapid onset of fatigue and headaches. The ALJ, however, never made any finding as to the credibility of plaintiff's testimony, let alone set forth the reasons for discounting it. *Cf. Smith, supra,* 728 F.2d at 1163, and *Streissel v. Schweiker,* 717 F.2d 1231, 1233 (8th Cir.1983) (" 'simply insufficient for the ALJ to suggest in conclusory fashion' that complaints of pain are not credible.")

■ Defendant's second error as a matter of law was in applying the "grid" to decide that plaintiff is not disabled. From the Court of Appeals' decision in *McCoy v. Schweiker,* 683 F.2d 1138, 1146 (8th Cir. 1982) (en banc), through the recent case of *Allred v. Heckler,* 729 F.2d 529, 533 (8th Cir.1984), there has been no doubt that the guidelines cannot be applied when the plaintiff's relevant characteristics differ in any material respect from those of the grid. It makes no difference whether the nonexertional impairment, in *Allred* it was pain, is either a separate ground for disability or is significant enough, when considered with exertional limitations, to be disabling. *Id.; Simonson v. Schweiker,* 699 F.2d 426, 430 (8th Cir.1983). Thus, we need not engage in speculation whether the constant threat of hemorrhage in plaintiff's one remaining eye should be labeled as an exertional or nonexertional impairment.

## V.

■ The decision to reverse this case outright rather than to reverse and remand rests on the overwhelming evidence on the record as a whole that plaintiff's impairments, as finally fully presented to the vocational witness, preclude substantial gainful employment at jobs available in the economy. This case is distinguishable from *Mallett v. Schweiker,* 721 F.2d 256, 258 (8th Cir.1983) (remand for both additional medical evidence and vocational expert testimony). The record has been fully developed, to include the vocational expert's evaluation of plaintiff's ability to perform sedentary work: "I'd have the greatest skepticism." Tr. 101. The facts of this case are more similar to those considered in *Warner v. Heckler,* 722 F.2d 428, 432 (8th Cir.1983) (no valid basis for discrediting the evidence of memory [i.e., nonexertional] impairment), and *McMillian v. Schweiker,* 697 F.2d 215, 221–22 (8th Cir.1983).

Accordingly, it is

ORDERED (1) that the Secretary's motion for summary judgment should be and is hereby denied. It is further

ORDERED (2) that plaintiff's motion for summary judgment should be and is hereby granted. It is further

ORDERED (3) that the final decision of the Secretary should be and is hereby reversed and the case is remanded with directions to determine and distribute disability benefits pursuant to 42 U.S.C. § 423, as of February 5, 1982.