**Georgia TRUNDLE, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. CIV 85–5154.**

United States District Court,
D. South Dakota, W.D.

Jan. 13, 1986.

Todd A. Schweiger, Black Hills Legal Services, Inc., Rapid City, S.D., for plaintiff.

Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

### A. NATURE AND PROCEDURAL HISTORY

Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g). The claim is for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

Plaintiff applied for Supplemental Security Income Benefits on September 5, 1984, alleging the claimed disability date of August 24, 1984. A hearing was held before the Honorable Frederick B. Strothman, Administrative Law Judge ("ALJ"), on March 6, 1985. On April 15, 1985, the ALJ denied the disability claim as filed. On July 31, 1985, the appeals council denied Plaintiff's request for a reversal of Judge Strothman's decision and thereafter the Plaintiff sought review in this Court.

(i) Prior Hearing History

Plaintiff originally filed a Supplemental Security Income claim on May 13, 1980 (Tr. 42) in which she claimed that she injured her back on August 9, 1977, while working on the railroad at Edgemont, South Dakota. (Tr. 46). At the time of her injury she was 35 years of age. It was determined at that time that she did not have a physical impairment that significantly interfered with basic work related functions and accordingly, disability was not established. (Tr. 53).

The vocational report in that proceeding indicated that her work history showed employment for six months from October of 1973 to April of 1973 as a laborer, one year and five months from April 1976 to September 1977 as a railroad laborer for Burlington Northern Railway, and four months in 1976 as a cook with the Stockmen's Cafe.

No employment history was shown after September of 1977. (Tr. 67).

Plaintiff's medical history indicated that on August 27, 1977, she consulted Dennis R. Wicks, M.D., and was found to have low back pain, secondary to lumbar muscle spasm which was caused by some heavy lifting while working for the Burlington Northern Railroad. After conservative treatment she was admitted to the hospital for bed rest and spent four days in the hospital. (Tr. 77–78). Capsulizing her condition therein in this period of time, Dr. Lee Ahrlin stated that:

> This lady was seen by me back on November 12, 1979. I had seen her a number of times prior to this. She has had problems with low back pain, along with other joint complaints. She is noted to have some arthritic changes in her back and I would not feel that she do any heavy type work. I would see no reason why she couldn't be trained to do some type of light activity, although I am not sure that her present status she would be able to do very much without further job training of some type. (Tr. 87).

On February 27, 1981, the Honorable Adam Gefreh, held based upon the application filed May 13, 1980, for Supplemental Security Income under the Social Security Act, that she was not eligible for benefits. (Tr. 94–99). The Plaintiff appealed to the Appeals Council for review and the ALJ was affirmed. (Tr. 105). No further action was taken with respect to that claim.

### (ii) Current Claim Procedure

A new application for Supplemental Security Income was filed on September 5, 1984 (Tr. 106). In this application she stated that her disabling condition was, "I have a backache. I take medication. When I work it bothers me." (Tr. 116).

A hearing was held before Frederick B. Strothman, Administrative Law Judge, on March 6, 1985, in Rapid City, South Dakota. Ms. Trundle, who was represented by a paralegal at this proceeding, was the only person who testified. Ms. Trundle testified that she has pain in "[m]y upper and lower back, my upper shoulder and my right arm—right part of my back and the bottom part on my right side. The top to the bottom of my lower back." (Tr. 24–25). She testified that the pain is nearly always present and is a burning and dull ache in the bottom of her back and causes a burning sensation in the upper part of her arms. (Tr. 24–26).

Ms. Trundle's daily activities are limited. She possesses a valid driver's license, but does not own a car or drive. (Tr. 17, 26). Her daily chores are limited to cooking for herself and washing dishes. Her daughter, who also lives in Edgemont, does the vacuuming, laundry, and most of the grocery shopping. (Tr. 27, 36). On a normal day she spends most of her time reading, doing Indian beadwork, and fixing simple meals. (Tr. 28). She testified that she used to attend dances regularly, but now usually only goes out once a week to attend church. (Tr. 28). Her daughter and mother visit on a regular basis. (Tr. 30).

Ms. Trundle testified that she does not like to take pain pills because they make her groggy. (Tr. 29). However, when the pain gets severe enough she will take Darvon or Valium and codeine. She also uses hot and cold packs on her back, and takes hot showers to relieve the pain. She testified that her condition has gotten progressively worse. She stated she used to have days where she felt fine, but now the pain is with her all the time. (Tr. 29–31).

Various exhibits were filed with the ALJ in connection with Ms. Trundle's claim. Exhibit B–18 was a report made by Dr. Dale Berkebile on November 6, 1984. (Tr. 184–185). In the report, Dr. Berkebile traced the history of Ms. Trundle's back problems. He noted that anti-inflammatory drugs upset her stomach. He stated:

> I can find no clinical evidence to support this woman's claim that she has back pain. She does tell a convincing story and I believe that she does have back pain. I just can't find anything on physical exam to substantiate a cause.

The record also contains a report from James Kullbom, M.D., made on November

30, 1984. (Exhibit B–19, Tr. 186). He reported:

She has more problems with cold weather and heavier lifting. The patient's x-ray examination shows spurring in the thoracic spine consistent with arthritis. The patient's physical exam today reveals no deformity, no atrophy, but she has normal nurological [sic] exam in both lower and upper extremities throughout. The patient has no weakness and no radicular symptoms, just back pain consistent with osteoarthritis of the spine. The patient's impression is osteoarthritis of the thoracolumbar spine.

Dr. Kullbom also noted that Ms. Trundle seemed to be "well motivated and want[ed] to get on with her life."

Ms. Trundle also underwent a CT scan. (Exhibit B–23, Tr. 193). Dr. Krafka's x-ray report from this scan stated that the L3–14 is considered to be normal, but that the L4–5 showed a "moderate disk bulge which may be of significance." The L5–S1 was also normal. The impression of Dr. Krafka was that Ms. Trundle had "probably significant disk bulge and possible herniation at L4–5. Myelography may be of additional help in this pt."

## B. THE ALJ'S DECISION

The ALJ denied Ms. Trundle's claim for disability. He found that the claimant was not engaged in substantial gainful activity. (Tr. 12). He also found that she suffered from a severe impairment as the term is defined in the regulations. (Tr. 9). Although the ALJ did not make a specific finding on the durational requirement, it can be assumed from the reading of the ALJ's opinion and findings that this requirement was met. Specifically, he found:

2. The medical evidence establishes that the claimant has chronic low back strain with moderate osteoarthritis of the thoracolumbar spine, without any neurological signs or findings, and that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart F, Regulations No. 4.

3. The claimant's testimony regarding the intensity, severity, and restricting nature of her pain was disproportionate to the medical findings, and not credible.

4. The claimant has the residual functional capacity to perform the physical exertion requirements of work except for frequent or repeated bending or twisting, prolonged or unrelieved walking and standing, or lifting and carrying in excess of ten pounds. There are no nonexertional limitations. (20 CFR 416.945).

5. The claimant is unable to perform her past relevant work as waitress, laborer, or cook.

6. The claimant has the residual functional capacity to perform the full range of sedentary work. (20 CFR 416.967)

7. The claimant is 43 years old, which is defined as a younger individual (20 CFR 416.963).

8. The claimant has completed an eighth grade education (20 CFR 416.-964).

9. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

10. Section 416.969 of Regulations No. 4 and Rules 201.24, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.-920(f).

The ALJ found that Ms. Trundle has the residual functional capacity (RFC) for at least "sedentary" work. He based this on

the medical findings of the case and claimant's testimony at the hearing. He stated:

> Based on the limited extent of the medical findings in this case, and the claimant's own testimony that she could sit for several hours without any discomfort, I found her testimony regarding her severe pain and severe limitations to be generally not credible. Even looking at the evidence most favorably to the claimant, I would agree that she does suffer some pain and limitation, and would therefore be precluded from any work that required frequent bending, twisting, or lifting and carrying in excess of 10 pounds.

He then went on to state that considering the Plaintiff's RFC for sedentary work, her age, education, and work experience, the vocational rules directed a finding of not disabled.

In disability cases where it is established that the claimant cannot return to her past work, the burden shifts to the Secretary to show that there is other substantial gainful activity that the claimant could perform. *Nicks v. Schweiker*, 696 F.2d 633 (8th Cir.1983); *Tucker v. Schweiker*, 689 F.2d 777 (8th Cir.1982).

■ The RFC is merely a medical factor. These guidelines are codified at Subpart P, Part 404, Chapter 3, Title 20 of the Code of Federal Regulations. It is an assessment of a claimant's physical ability to perform certain *exertional* tasks. *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir. 1982). However, the guidelines and grid are not controlling when a claimant has a *nonexertional* impairment. *Id.* Pain is a nonexertional limitation. *Nicks, supra,* at 636; *see also Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 666, note 8 (1st Cir.1981). In cases involving nonexertional impairments, the guidelines and grid "cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony." *McCoy, supra,* at 1148.

■ Complaints of pain should be assessed in accordance with *Polaski v. Heck-*ler, 739 F.2d 1320 (8th Cir.1984) (*Polaski I*) and *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984) (*Polaski II*). *Miller v. Heckler*, 756 F.2d 679 (8th Cir.1985). According to *Polaski I*,

> Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaint solely because the objective medical evidence does not fully support them.

*Polaski I, supra,* at 1322. Furthermore, the court in *Polaski I* ruled that the lack of objective medical evidence to support the degree of severity of a claimant's subjective complaints is just one factor to be considered in evaluating the credibility of the testimony and complaints. *Id.* The ALJ should give full consideration to all of the evidence relating to the complaints, including observations by third parties, treating and examining physicians, the claimant's prior work record, and observations relating to matters such as:

> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.

*Id.* Also, *Polaski II*, at 949. In other words, it is error for the ALJ to accept or reject subjective complaints solely on the basis of personal observations. Nevertheless, subjective complaints of pain may be discounted if there are inconsistencies in the evidence as a whole. *Polaski I, supra,* at 1322.

In the instant case, the claimant testified as to her daily activities, which are limited to doing a few household chores, reading, and crafts. She also testified that the pain is almost always present, and described it as a burning, dull sensation. She is unable to take anti-inflammatory drugs, because they upset her stomach. She takes Tylenol

and tranquilizers on a fairly regular basis, but testified she does not like to take drugs that make her sleepy and tries to avoid this as much as possible.

■ In this case, the ALJ erred by not calling a vocational expert to testify concerning what other jobs that Trundle might be able to perform in light of the pain from which she suffers. *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984). In *Smith*, the claimant had rheumatoid arthritis or was considered a borderline case. She had to limit her exposure to the cold, and she also required an hour of rest in the morning and in the afternoon. The claimant testified to pain in her shoulders, knees, hips, hands and back. She was able to do some housework, including vacuuming and cooking, and drove approximately 30 miles per week. She testified that she normally took six aspirin at once, and she limped when her hip hurt. There was medical evidence that she did not suffer from a loss of range of motion. The court found several grounds for reversal, but stated that the inadequacy of the ALJ's findings with respect to the claimant's complaints of pain and limitation of motion was one ground compelling reversal. The court stressed that the ALJ must give serious consideration to a claimant's subjective complaints of pain. *Id.* at 1163. Even though an ALJ may not believe the claimant's subjective complaint of pain based on inconsistencies in the testimony and other circumstances in the case, the ALJ cannot circumvent the Eighth Circuit's principles regarding pain " 'under the guise of a credibility finding.' We have recognized that '[i]t is simply insufficient for the ALJ to suggest in a conclusory fashion that complaints of pain are not credible.' " *Id.* (quoting *Simonson v. Schweiker*, 699 F.2d 426, 429 (8th Cir.1983)).

■ The Eighth Circuit has consistently emphasized that strict reliance on objective medical evidence of pain is contrary to the law of this circuit. *E.g., Marshall v. Heckler*, 731 F.2d 555 (8th Cir.1984); *Layton v. Heckler*, 726 F.2d 440 (8th Cir.1984). In *Marshall*, the Eighth Circuit recognized that the ALJ has the authority to reject subjective evidence of pain for a legally sufficient reason. *Marshall, supra,* at 557. However, when there is no legally sufficient reason for rejecting subjective evidence of pain, the ALJ may not rely on the grid. In cases where the guidelines and grid do not apply, the Secretary must call a vocational expert to establish whether the claimant can do work other than her past job, unless there is substantial evidence from other sources which bears directly on the substantial gainful activity of the claimant. *Id.*

In this case the ALJ clearly failed to apply the *Polaski* standard and the factors enunciated in the other dispositive Eighth Circuit cases cited above. On remand the burden will be upon the Secretary to show that there were other jobs available in the national economy which realistically suited Trundle's qualifications and capabilities. *McMillian v. Schweiker*, 697 F.2d 215 (8th Cir.1983). In other words, if the Secretary holds another hearing on this matter, a vocational expert must be called to testify as to whether or not there is work in the economy which the claimant can perform.

### ORDER

Based on the foregoing Memorandum Opinion, it is hereby

ORDERED that the Secretary's final decision denying Plaintiff's claim for Supplemental Security Income benefits is reversed and remanded. The Secretary may either promptly award Plaintiff's claim for benefits, or promptly hold an additional hearing where testimony will be presented, including testimony by a vocational expert.