**Freddie R. RUSH, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.**

No. 83–2695.

United States Court of Appeals,
Eighth Circuit.

Submitted April 24, 1984.
Decided June 27, 1984.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., Frank V. Smith, III, Regional Atty., Mary K. Biester, Asst. Regional Atty., U.S. Dept. of Health and Human Services, Dallas, Tex., for appellee.

The Niblock Law Firm by Walter R. Niblock, Fayetteville, Ark., for appellant.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

This case presents the question whether, in order to terminate disability benefits, the Secretary must produce new evidence showing that the claimant's condition has improved or is not so disabling as previously supposed or that there is some other legitimate reason to re-evaluate the claimant's right to receive benefits. We answer in the affirmative.

I.

Freddie R. Rush is 32 years old and has a twelfth-grade education. Before he became disabled in February 1975, he worked as a service-station attendant and in a poultry plant.

Rush's medical problems began in early 1975, when he underwent a bilateral vagotomy (an operation on the vagus nerve, which serves the stomach) and pyloroplasty (plastic surgery of the pylorus, which is the lower orifice of the stomach, leading into the duodenum), to correct a duodenal ulcer. He continued to have severe stomach pain, diarrhea, cramping, and nausea, and was hospitalized several times following the ulcer surgery. In April 1976 an exploratory laparotomy was performed, but Rush's doctors were still unable to determine the exact cause of his symptoms.

Rush initially filed for disability benefits in October 1975, and the Secretary determined a period of disability from February 1975 through June 1976. On review at the end of that period, the Secretary initially determined that Rush was no longer dis-

abled, but, on June 15, 1977, Administrative Law Judge David T. Hubbard disagreed and held that Rush remained entitled to benefits. The ALJ relied on evaluations by Dr. Martin, Rush's treating gastroenterologist, who indicated that Rush's symptoms had continued and were due to surgical complications:

> I feel that his pain is primarily of muscular nature and probably is related to his abdominal incision, perhaps due to scarring or an entrapped neuroma [a swelling growing on a nerve]. His other complaints I think are due to post-vagotomy diarrhea and to gastric atony [a relaxation and consequent weakness of the muscles of the stomach] and hiatal hernia with reflux, perhaps due to his vagotomy.... I think that he should be considered disabled for gainful employment because of the magnitude and severity of his symptoms.

Tr. 132. The ALJ also relied on the reports of two consulting psychiatrists which indicated that it was unlikely that Rush was malingering, Tr. 134, that he suffered from anxiety and depression resulting from his physical problems, and that, if he could overcome his psychological problems, he "would be an excellent candidate for vocational rehabilitation." Tr. 137.

In March 1981 the Secretary began another review of Rush's condition, and a hearing was held before a second ALJ, Judge Jerry Thomasson. In addition to the evidence considered by Judge Hubbard in 1977, Judge Thomasson examined recent reports by Dr. Martin and by a Dr. Holder, a consulting family practitioner.

Dr. Martin reported that Rush was last evaluated in January 1980

> and at that time had evidence of inflammation and stenosis [narrowing] of his previous pyloroplasty with friability [susceptibility to crumbling] on the gastric side of the anastomosis.... I think that Rush continues to have bonified [sic] problems that related [sic] in part to hypersecretion and in part to partial outlet obstruction and in part to severe abdomi-

nal weakness and pain as [a] result of previous surgery.

Tr. 159. Dr. Martin also believed that Rush's pain and other symptoms were aggravated by stress: "I think that much of Freddie's problem is due to his appreciation of pain and response to it as much as the underlying cause of the pain." Tr. 163. Dr. Martin thought that Rush "might benefit from intensive physical therapy and psychotherapy and biofeedback to help him deal with [his] pain," but that the pain currently rendered Rush "disabled for any kind of physical activity." Tr. 164. Dr. Holder, the Secretary's consulting physician, agreed in substance with Dr. Martin's assessment. Dr. Holder recommended that "the opinion of another gastroenterologist regarding further surgery on [Rush's] pyloric channel outlet obstruction" be obtained, because he believed that "something could be done to help this man return to a normal and productive life." Tr. 161.

These reports clearly demonstrate that Rush's condition was substantially the same as it was in 1977 when Judge Hubbard determined that he was still disabled. Nevertheless, Judge Thomasson held:

> There is no question the claimant has problems as a result of the multiple surgical procedures which he has had and continued problems with the outlet obstruction. Notwithstanding this, he has been able to maintain his usual weight and is not malnourished.
>
> In view of this, it is felt the claimant can perform his past relevant work and ... must be found "not disabled."

Tr. 14.

Rush requested review by the Appeals Council and submitted, as additional evidence, a psychological and vocational evaluation by Douglas A. Stevens, a clinical psychologist. Dr. Stevens reported that "[t]ypically, individuals showing [Rush's] type of GI problems, internalize stress and reflect it in somatic complaints. [Rush's] description of his difficulty fits this model." Tr. 170. This impression was confirmed by Rush's Minnesota Multiphasic Personality Inventory profile, which indicated "a very

severe psychophysiological neurosis, gastrointestinal [sic] type." *Ibid.* Dr. Stevens doubted whether Rush could return at once to competitive employment, but suggested that he "become involved in a rehabilitative program, that would probably make use of a sheltered workshop situation, and gradually rebuild his tolerances [sic] in a protective environment, where he could receive counseling for his emotional impairments." Tr. 171. Dr. Stevens also recommended that, to encourage Rush to attempt rehabilitation, "some contingent relationship involving benefits [be] developed where he could be assured of support for only a limited time, contingent upon his entering a vigorous rehabilitative program." *Ibid.*

The Appeals Council denied Rush's request for review, thereby making Judge Thomasson's decision the final decision of the Secretary. The District Court held that this determination was supported by substantial evidence. We reverse.

## II.

### A.

■ Rush urges us to apply the so-called medical-improvement standard, enforced by a burden-shifting presumption, to his case. Specifically, he argues that he should be entitled to a presumption of disability and that to overcome the presumption the Secretary should be required to present some evidence that his condition has improved or that his condition, when evaluated in the light of current evidence, is not so serious as first believed. The Secretary responds that she need only measure the claimant's current medical status against the relevant standards for determining disability in the first instance. Although she does not say so explicitly, we understand the Secretary's position to be that she is free to terminate benefits even if the current evidence about the claimant's condition is substantially identical to the evidence considered in the prior disability determination.

We implicitly rejected the Secretary's position in *Smith v. Schweiker,* 728 F.2d 1158

(8th Cir.1984). That case involved a claimant who had previously worked as a meat packer in a refrigerated room. The Secretary determined that the claimant was disabled because of arthritis and awarded benefits. Among the evidence considered at the time that this determination was made was a medical opinion that the claimant "'should not be exposed to damp or extremely cold environments.'" *Id.* at 1160 (quoting Tr. at 114). Subsequently, the Secretary sought to terminate benefits on the ground that the claimant's condition had improved, and the ALJ agreed. We reversed and remanded, holding that the claimant had clearly established that she could not return to her former job as a meat packer, because the current evidence showed that the claimant still had arthritis and should not be exposed to cold. Thus, the ALJ erred in not placing the burden on the Secretary to show the existence of other jobs in the economy that the claimant could perform. In the course of our discussion we said, *id.* at 1162,

This circuit has recognized that in a disability benefits termination proceeding, as in an initial benefits proceeding, the burden of persuasion is on the claimant to show that he or she has a disability and is entitled to benefits. *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981). In *Weber,* this Court acknowledged that the Secretary need not show improvement in order to terminate benefits, but could show that the condition was less serious than was at first supposed. Thus, the earlier determination does not bar further proceedings by the Secretary. A claimant is not guaranteed the right to continuing disability benefits without producing evidence that the disabling condition continues. The Court also indicated, however, that "[i]t would be wrong for the Secretary to terminate an earlier finding of disability on no basis other than his reappraisal of the earlier evidence." *Weber, supra,* 640 F.2d at 178–79 (quoting *Miranda v. Secretary of H.E.W.,* 514 F.2d 996, 998 n. * (1st Cir. 1975)).

In *Smith,* however, we were not presented with the argument Rush makes here, that he should be entitled to a presumption of continuing disability and that the burden should be on the Secretary to produce new evidence of improvement or mistake. Thus, we analyzed the facts in *Smith* in accordance with the standards for an original disability-determination case, and the somewhat equivocal language quoted above is dictum. See also *Ledoux v. Schweiker,* 732 F.2d 1385 (8th Cir.1984).

### B.

Congress has not prescribed the standard to be applied in the disability-termination process. The Secretary, however, has promulgated a regulation, 20 C.F.R. § 404.-1594(b) (1983), which provides that a disability will be determined to have ended in the earliest of:

> (1) The month in which [the] impairment, as shown by current medical or other evidence, is such that [the claimant] is able to do substantial gainful activity;

> (2) The month in which [the claimant] demonstrated [his or her] ability to engage in substantial gainful activity (following completion of a trial work period); or

> (3) The month in which [the claimant] actually [does] substantial gainful activity (where [the claimant is] not entitled to a trial work period).[1]

When this regulation was promulgated in 1980, the Secretary explained,

> In §§ 404.1579, 404.1586, 404.1594 and 416.994 [2] we explain a new policy on when disability is considered to stop. At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled. About three years ago, we

changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined in the law.

> \*    \*    \*    \*    \*    \*

> These recodified regulations make it clear that disability ends when current evidence shows that the individual is able to engage in SGA [substantial gainful activity] regardless of whether actual improvement can be demonstrated.

45 Fed.Reg. 55,568, 55,583 (1980).

Insofar as this interpretation means that evidence of medical improvement is not the sole criterion for terminating disability benefits, we agree. There may be other legitimate reasons to re-evaluate a claimant's right to continue receiving benefits. The Secretary may receive new evidence—evidence not available at the time of the prior disability determination and not substantially identical to evidence available at that time—indicating that the claimant is no longer disabled. For example, the claimant may have benefitted from medical or vocational therapy or technology, even though his or her medical condition has not improved; or the claimant's impairment, as assessed by new or improved diagnostic techniques or as demonstrated by the claimant's current activities, may not be so disabling as it was considered to be at the time of the prior determination. Or there may have been clear and specific error in the prior determination, as, for example, where evidence used in that determination belonged to another individual, was incorrectly reported, was obviously misread, or was perjured. But where the current evidence shows that the claimant's condition is substantially unchanged (or worse), and there is no new evidence such as that described above indicating that the claimant is now able to work, we do not believe that

---

**1.** *See also* 20 C.F.R. § 404.1590(a) (1983) ("a period of disability ends if the medical or other evidence shows that [the claimant is] not disabled or if there is not enough evidence to support a finding that disability continues.").

**2.** Sections 404.1579, 404.1586, and 416.994 address the termination of benefits of surviving spouses, blind persons, and persons receiving Supplemental Security Income, respectively. These sections are substantially identical to § 404.1594.

the regulation should be construed to allow the Secretary simply to change her mind.

■ We also note that the Secretary is entitled to rely on a prior determination that a claimant is not disabled and, without holding a hearing, dismiss a second claim on the ground that it is barred by the doctrine of res judicata. See 20 C.F.R. § 404.957(c)(1) (1983).[3] We believe that a prior determination that a claimant's condition *is* disabling should be given similar preclusive effect to prevent the termination of benefits solely on a reappraisal of the prior evidence. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).[4]

While "[a]n agency's interpretation of its own regulations is entitled to deference by the courts, . . . an agency's interpretations are not conclusive and courts are not bound by them." *Cunningham v. Toan,* 728 F.2d 1101, 1105 (8th Cir.1984) (citations omitted). If we adopted the interpretation urged by the Secretary here, the Secretary could "submit the same medical evidence to different physicians time and time again until [she] obtains a favorable result," *Dotson v. Schweiker,* 719 F.2d 80, 82 (4th Cir.1983), and termination of benefits would depend "simply on the whim of a changed ALJ," *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982). Such a result would be inconsistent with the principle that the So-

cial Security Act "should be broadly construed and liberally applied to effectuate its humanitarian goals," Heaney, *Why the High Rate of Reversals in Social Security Disability Cases?,* 7 Hamline L.Rev. 1, 2 (1984); see also, *e.g., Andrews v. Harris,* 635 F.2d 1362, 1364 (8th Cir.1980) (per curiam), and we do not believe that Congress intended it. In addition, the words of the regulation simply do not say what the Secretary says they mean. They do not even come close to saying that a prior determination of disability may be disregarded without any new evidence.

### C.

A number of other Circuits have rejected the position advanced by the Secretary here, held that a claimant in a termination proceeding is entitled to a presumption of continuing disability, and placed on the Secretary the burden of going forward with evidence showing that there is a legitimate reason for reevaluating the claimant's entitlement to benefits. For example, in *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982), the Ninth Circuit said,

In an appropriate case . . . a prior ruling of disability can given rise to a presumption that the disability still exists. "Once evidence has been presented which supports a finding that a given condition exists, it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir. 1973). A presumption, of course, does not affect the ultimate burden of proof. It does, however, impose "on the party against whom it is directed the burden of going forward with evidence to rebut or

---

**3.** Ordinarily, claimants cannot obtain judicial review of such a decision. *E.g., Harapat v. Califano,* 598 F.2d 474 (8th Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 482, 62 L.Ed.2d 406 (1979).

**4.** We agree with Professor Davis that the mere fact that Social Security proceedings, strictly speaking, do not involve "opposing parties" and are not "adversarial" should not bar application of the doctrine of administrative res judicata. 4 Davis, *Administrative Law Treatise* § 21:3, at 53–55 (2d ed. 1983). Where a hearing is held,

the claimant is entitled to be accompanied by an attorney, evidence is introduced, and parties are subject to examination, we believe that the proceeding is sufficiently "judicial" to justify according preclusive effect to the outcome. The question whether the same result should obtain where the prior determination of disability was made without a hearing is not before us, and we do not decide it. For a case holding the doctrine of administrative res judicata inapplicable in such a situation, see *Delamater v. Schweiker,* 721 F.2d 50 (2d Cir.1983).

meet the presumption." Fed.R.Evid. 301.

\* \* \* \* \* \*

All the presumption does is impose on the Secretary a burden to come forward with evidence that [the claimant's] condition has changed.

669 F.2d at 586–87. *Accord, Dotson v. Schweiker, supra,* 719 F.2d at 82. ("[T]he Secretary's initial determination gave rise to a presumption at the time of [the claimant's] second hearing that he was still disabled and ... the Secretary was required to rebut this presumption."); see also *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982). Chief Judge Miles W. Lord recently adopted this reasoning when he preliminarily enjoined the Secretary to use the medical-improvement standard in termination caes. *Polaski v. Heckler,* 585 F.Supp. 1004 at 1011–1013, 1016, 1018–1019 (D.Minn.1984), *appeal pending,* No. 84–5085 (8th Cir.).

The Third Circuit has taken a slightly different approach:

[O]nce the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. The presumption of a

continuing disability does not affect the ultimate burden of proof. It imposes on the Secretary only the burden of going forward with evidence to rebut or meet the presumption.

\* \* \* \* \* \*

Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity.

*Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir.1983).[5]

▮ We agree with these courts that, because the Secretary may not terminate benefits merely upon a reappraisal of the prior evidence, *Smith, supra,* 728 F.2d at 1162, a rebuttable presumption of continuing disability is required. We therefore hold that, in a disability-termination proceeding, there is a presumption that a claimant who has previously been determined to be disabled remains disabled[6]. We also hold, in accordance with the Ninth Circuit's position, that the initial burden is on the Secretary to come forward with evidence which indicates that there is a legitimate reason to re-evaluate the claimant's right to receive benefits and which, if

---

**5.** Two Circuits have declined to place an explicit burden of production on the Secretary. In *Crosby v. Schweiker,* 650 F.2d 777 (5th Cir. Unit A 1981) (per curiam), the court rejected an argument that "the so-called burden of proof should be upon the Secretary in termination cases," holding that " 'the burden of proving disability is on the claimant, not the Secretary.' " *Id.* at 778 (quoting *Myers v. Richardson,* 471 F.2d 1265, 1268 (6th Cir.1972)). In *Miranda v. Secretary of HEW,* 514 F.2d 996 (1st Cir.1975), the court said that because both parties in a termination case have certain responsibilities which

resist translation into absolutes, especially because social security proceedings are not strictly adversarial.... we see no point in deciding abstractly whether the "burden of proof" at a termination proceeding is on the claimant or Secretary.

*Id.* at 998.

Neither of these cases discussed the difference between the burden of production and the burden of persuasion. In both, the Secretary had

met a burden of production, because the Secretary had introduced some evidence and had found that the claimant's condition had improved. The question in each case was whether that finding was supported by substantial evidence. Thus, the question whether the Secretary must produce evidence of improvement or some other legitimate reason to re-evaluate the claimant's right to receive benefits was not directly before the courts. We do not believe that either *Crosby* or *Miranda* would prevent these Circuits from placing the burden of production on the Secretary in a proper case.

**6.** Our holding is not inconsistent with the Supreme Court's statement in *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) that the claimant "bears a continuing burden of showing ... that he has a [disabling] physical or mental impairment." We read this language to refer to the burden of persuasion, which remains at all times on the claimant.

believed, would justify termination.[7] The Secretary may meet this burden by showing that there was clear and specific error in the prior determination or by producing new evidence that the claimant's medical condition has improved, that the claimant has benefitted from medical or vocational therapy or technology, or that the claimant's condition is not so disabling as originally supposed.

If the Secretary does not meet this burden of production, the claimant will be deemed to be still disabled. If, on the other hand, the Secretary does meet her burden, the presumption of disability will drop from the case, and the proceeding will continue in the same manner as any other disability determination, with the burden of persuasion on the claimant.

### III.

■ It is clear that the Secretary did not meet her burden of production in this case. The reports of Drs. Martin, Holder, and Stevens essentially reiterated the evidence given by the physicians in the 1977 determination, when Rush was determined to be disabled. Thus, we reverse, because Rush, by virtue of the presumption of continuing disability, must be deemed still disabled.

We recognize that we are enunciating our presumption rule for the first time in this case, so we shall also consider, without regard to the presumption, whether the Secretary's determination is supported by substantial evidence. We hold that it is not. Dr. Martin firmly stated that Rush's symptoms were severe and prevented him from working. Dr. Holder did not disagree with this assessment, but merely recom-

mended that other steps be taken to help Rush "return to normal and productive life." Dr. Stevens, the psychologist, concurred, finding that the combination of Rush's physical and psychological problems would prevent him from working in any environment other than a sheltered one. However, the possibility of "work in a sheltered workshop is not substantial evidence supporting a denial of disability benefits." *Van Horn v. Heckler*, 717 F.2d 1196, 1199 (8th Cir.1983) (citing *Bailey v. Califano*, 614 F.2d 146, 149 (8th Cir.1980)). The observation by the ALJ that Rush had not lost weight and was not malnourished cannot compensate for the uncontradicted evidence that Rush was not only unable to perform his past relevant work, but was completely disabled. Accordingly, we reverse and direct that Rush's benefits be reinstated.[8]

---

**7.** We recognize that in *Smith, supra,* 728 F.2d at 1162, we said, "A claimant is not guaranteed the right to continuing disability benefits without producing evidence that the disabling condition continues." Taken alone, this language could be read to indicate approval of the Third Circuit's position in *Kuzmin* placing the initial burden on the claimant to produce evidence that his or her condition has not changed. We do not believe either that there is any need for this additional step or that we are compelled by *Smith* to prescribe it. *Smith* did not address the question of presumptions and concomitant burdens of production, so it is not controlling on this issue. In addition, *Smith* also says, 728

F.2d at 1162, that disability benefits may not be terminated without new evidence.

**8.** We have rejected the Secretary's contention that the suggestion of Drs. Martin and Stevens that Rush might benefit from psychotherapy and vocational rehabilitation services establish that Rush is no longer disabled. However, Rush is a young man. If he can improve himself, he should do so, and the Secretary is entirely free to reexamine the case from time to time to satisfy himself that Rush is not unreasonably rejecting treatment or vocational rehabilitation. See 20 C.F.R. §§ 404.1530, .1596 (1983).