**Larry O'NEAL, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 83–2300.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

July 16, 1984.

R.H. "Buddy" Hixson, Hixson, Cleveland & Rush, Paris, Ark., for plaintiff.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Larry O'Neal, seeks judicial review of a final decision of the Secretary of

Health and Human Services denying his claim for a period of continued disability and social security disability insurance benefits. The Court has jurisdiction of the cause pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, we reverse the decision of the Secretary.

Plaintiff filed his original application for disability benefits on July 16, 1976, alleging that he had become unable to work on July 7, 1976, because of an injured vertebrae. In 1977 he was awarded benefits by an Administrative Law Judge (ALJ) and continued to receive them until the state agency and the Social Security Administration determined that his disability had ceased by November, 1982. Mr. O'Neal then requested a hearing before an ALJ. A full hearing was held on April 19, 1983, attended by Plaintiff and his wife; he was not represented by counsel at the hearing. On July 25, 1983, the ALJ issued his decision in which he found that Mr. O'Neal's disability had ceased and that he was no longer entitled to disability benefits. When the Appeals Council declined to review the hearing decision, that decision became the final decision of the Secretary and it is that decision which Plaintiff seeks to have reviewed.

At the time of the hearing Mr. O'Neal was 32 years old and had completed only the eighth grade. He had work experience as an oilfield roughneck, truck driver, and heavy equipment operator. At the hearing he testified that his condition had worsened since the original determination in 1977 with the pain spreading to his upper back and arms. He indicated that the pain was constant and aggravated by any exertion. His wife confirmed that he is not able to do any sort of work and that often he must lie on the floor in front of the heater to get any sort of relief at all.

For the most part, the medical record consists of medical reports written in 1977 in connection with the original disability determination. That evidence does confirm that Mr. O'Neal did seek treatment for a longstanding back problem; a lumbar myelogram was positive with evidence of pro-truding discs at the L3, L4, and L5 levels. He also had neurological deficit correlating with the disc protrusions. However, because his strength and reflexes were normal at that time, it was felt that aggressive measures such as surgery were not warranted. The treatment recommended was conservative including exercise, a weight reduction plan, and sedentary activities.

On November 4, 1982, Mr. O'Neal saw Dr. Byron L. Brown for an examination arranged by the state agency. Dr. Brown found that Plaintiff had some hypalgesia of the left calf and evidence of a mild injury to the lumbar spine evidenced by reactive arthritic lipping. Dr. Brown reported that Plaintiff was apparently taking no medication and noted the presence of moderate callosities of his hands which indicated moderate manual labor. Dr. Brown prescribed Indocin, Flexeril, and Darvocet. On January 12, 1983, Plaintiff again went to Dr. Brown, this time complaining of pain in his neck and shoulders. Dr. Brown prescribed Norflex, Tanderil, and Fiorinal # 2, and instructed him to return if his condition was not better in ten days. The records reflect that he did not return.

Finally, on May 6, 1983, Mr. O'Neal was seen by Dr. Douglas W. Parker, an orthopedist. X-ray examination showed no fractures, dislocations, or other abnormalities. Dr. Parker recommended rehabilitation consultation be considered and education as to back problems be instituted as well as a weight reduction program. In his opinion, although he did not think Plaintiff could lift or carry over five to ten pounds, Dr. Parker did suggest that Plaintiff could do some type of sedentary work if properly rehabilitated.

We must consider Mr. O'Neal's claim for continued disability benefits in light of a recent Eighth Circuit case, *Rush v. Secretary of Health and Human Services*, 738 F.2d 909 (8th Cir.1984). In *Rush* the Eighth Circuit Court of Appeals had before it the issue of whether the Secretary, in order to terminate disability benefits, must produce new evidence showing that a claimant's condition has improved or

is not so disabling as was previously supposed or that there is some other legitimate reason to re-evaluate a claimant's right to receive benefits. Because the Secretary may not terminate benefits simply upon a reappraisal of the evidence from a prior determination, *Smith v. Schweiker*, 728 F.2d 1158 (8th Cir.1984), the Court in *Rush* held that in a disability-termination proceeding, there is a rebuttable presumption that a claimant who has previously been found to be disabled remains disabled.

■ In reaching this conclusion the Court recognized that the Secretary may terminate benefits for legitimate reasons other than discovery of evidence of medical improvement. The Secretary may receive new evidence [1] which indicates the claimant is no longer disabled or she may be able to show that there was clear and specific error in the original determination. However, where the current evidence demonstrates that a claimant's condition is substantially unchanged or may actually be worse, the Secretary may not make a decision to terminate benefits simply on the basis of her re-evaluation of the earlier evidence.

■ Based upon *Rush* it is now clear that in disability-termination cases the Secretary bears the burden of coming forward with evidence which establishes a legitimate reason to re-evaluate the claimant's right to receive disability benefits and which, if believed, would justify termination of benefits.

> The Secretary may meet this burden by showing that there was clear and specific error in the prior determination or by producing new evidence that the claimant's medical condition has improved, that the claimant has benefited from medical or vocational therapy or technology, or that the claimant's condition is not so disabling as originally supposed.

If the Secretary does not meet this burden of production, the claimant will be deemed to be still disabled. If, on the other hand, the Secretary does meet her burden, the presumption of disability will drop from the case, and the proceeding will continue in the same manner as any other disability determination, with the burden of persuasion on the claimant.

*Rush v. SHHS, supra*, at 916.

■ Having carefully reviewed the record in this case, we cannot say that the Secretary has met her burden of production. Mr. O'Neal has testified that his condition is worse than at the time he was found to be disabled. There is no indication that there was clear and specific error in the prior determination [2] nor is there any evidence of medical improvement. The Secretary has not shown that Mr. O'Neal has benefited from medical or vocational therapy or that his condition is not as disabling as was originally supposed. In fact, because so little of the medical evidence was current and so much of it was developed at the original disability determination in 1977, it is not unreasonable to suspect that this is indeed a case in which the decision to re-evaluate was based solely upon a reappraisal of the evidence from the 1977 determination.

Because the Secretary has established no legitimate reason to re-evaluate Mr. O'Neal's right to receive disability benefits, we must reverse the decision of the Secretary and award benefits to Plaintiff. This matter shall be remanded solely for calculation of benefits.

---

**1.** New evidence in this context is evidence which was not available at the time of the prior determination and which is not substantially identical to evidence which was available at that time. *Rush* at 913.

**2.** Examples of specific error suggested in *Rush* include cases where the evidence used in the prior determination was perjured, incorrectly reported, obviously misread, or belonged to another person.