Arthur IRVIN, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

No. 84 Civ. 343(RJW).

United States District Court, S.D. New York.

Aug. 7, 1984.

The Legal Aid Society, New York City, for plaintiff; Conrad A. Johnson, Attorney-in-Charge, Olive L. Clark, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Rosemarie E. Matera, Sp. Asst. U.S. Atty., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This action is brought pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), for judicial review of a final decision by the Secretary of Health and Human Services (the "Secretary"), which terminated plaintiff's supplemental security income based on disability ("SSI") (hereinafter "disability benefits").

The Secretary held that, as of February 1983, plaintiff no longer suffered from a "disability" within the meaning of the Act. Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons hereinafter stated, plaintiff's motion is granted, and the Secretary's decision terminating plaintiff's disability benefits is reversed. The Secretary is directed to resume payment of disability benefits to plaintiff and to pay all benefits due plaintiff since their termination in April 1983.

## BACKGROUND

Plaintiff is currently fifty-two years old. He has completed the tenth grade. According to the administrative record, plaintiff has not worked since 1971. He was last employed as a porter in a barber shop. Prior to that time, he worked as a salad maker in various restaurants.

In November 1978, plaintiff was determined to be eligible for disability benefits because he was suffering from: arthritis in his legs, emphysema, high blood pressure, alcoholism, chronic bronchitis, periodic renal failure, removal of his left kidney, and fixed pronation of the left forearm. Plaintiff's alcoholism is currently in remission. In addition to these ailments, plaintiff now appears to suffer from: muscle spasms of the spine, osteoarthritis, cataracts, chronic skin rash, depression and anxiety, and dependency on a back brace. He is under continuous treatment at New York Medical College and its affiliate, Metropolitan Hospital Center.

Plaintiff's benefits were discontinued effective April 1983 based on a determination that plaintiff had ceased to be disabled within the meaning of the Act as of February 1983. Following a request by plaintiff for reconsideration, this determination was affirmed. Plaintiff then filed a timely request for an administrative hearing. Such a hearing was held on July 28, 1983, before Administrative Law Judge Emanuel Tannenbaum (the "ALJ").[1] In a decision dated September 2, 1983, the ALJ found that plaintiff was no longer under a "disability" as defined by the Act and that he was not entitled to continued disability benefits. This determination became the final decision of the Secretary on November 28, 1983, when it was adopted by the Appeals Council.[2]

## DISCUSSION

### I.

The legal principles that govern the Court's decision on the instant motion are well settled. "Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3] The mere presence of an

---

1. Plaintiff filed a request for a hearing on February 16, 1983. He was initially scheduled to appear on March 18, 1983 for such a hearing before the ALJ. Plaintiff requested that this hearing be adjourned to a different date because he had a medical appointment on that date and because he needed additional time to obtain copies of the relevant medical evidence and to retain legal counsel. The ALJ considered plaintiff's request as demonstrating "a cavalier attitude in ignoring the formal hearing process," and concluded that plaintiff "has no intention to pursue his claim to an ultimate conclusion." (Tr. 28). Accordingly, the ALJ dismissed plaintiff's request for hearing. The Appeals Council, however, determined that plaintiff's "request for a postponement was reasonable in light of his stated reasons and the information that had been provided to him," and that the ALJ's dis-

missal of the request for hearing constituted an abuse of discretion. (Tr. 22). Therefore, the Secretary, through the Appeals Council, vacated the ALJ's order of dismissal, and remanded the case for a hearing and decision.

2. A transcript of the administrative hearing, the documentary evidence contained in the administrative record, and the decisions of the ALJ and the Appeals Council have been placed before the Court by way of the Secretary's answer.

3. *See also* 42 U.S.C. § 1382c(a)(3)(A), which defines "disability" for the purposes of SSI eligibility. This definition is virtually identical to that in 42 U.S.C. § 423(d)(1)(A). The standard for judicial review is also identical in both SSI and disability insurance benefits cases under 42

impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5), 20 C.F.R. § 404.1520; *see Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984); *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984); *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir.1983); *Schauer v. Schweiker*, 675 F.2d 55 (2d Cir.1982); *Carter v. Schweiker*, 649 F.2d 937, 940 (2d Cir.1981); *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir.1972). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano*, 572 F.2d 908, 912–13 (2d Cir.1978). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that exists in the national economy that the claimant could perform. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983); *Bluvband v. Heckler, supra*, 730 F.2d at 891; *Ferraris v. Heckler, supra*, 728 F.2d at 584; *Rivera v. Schweiker, supra*, 717 F.2d at 722–23; *Parker v. Harris, supra*, 626 F.2d at 231; *Bastien v. Califano, supra*, 572 F.2d at 912–13.

The Secretary may terminate the payment of disability benefits if it is determined that plaintiff's disability has ceased. 42 U.S.C. § 425(a). *See, e.g., De Leon v. Secretary of HHS*, 734 F.2d 930, 936 (2d Cir.1984). Under the medical improvement standard recently adopted by the Second Circuit, "the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *Id. See also Rush v. Secretary of HHS*, 738 F.2d 909 (8th Cir.1984); *Parente v. Heckler*, 735 F.2d 743 (2d Cir.1984); *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983); *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982); *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981); *Hayes v. Secretary of HEW*, 656 F.2d 204 (6th Cir.1981); *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir. 1981); *Miranda v. Secretary of HEW*, 514 F.2d 996 (1st Cir.1975); *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973); *Mersel v. Heckler*, 577 F.Supp. 1400 (S.D.N.Y. 1984); *Romero v. Heckler*, 586 F.Supp. 840 (S.D.N.Y.1984); *Velazquez v. Heckler*, 586 F.Supp. 125 (S.D.N.Y.1984).

In applying the medical improvement standard, the Secretary must compare the condition of a benefits recipient at the time of review with his or her condition at the time disability benefits were initially granted. *See, e.g., De Leon v. Heckler, supra*, 734 F.2d at 936. The claimant, having once established that a particular condition is disabling, is entitled to a presumption that the condition remains disabling. *Id.* at 937. As the Third Circuit explained:

Basic principles of fairness as well as the need to provide both the appearance and fact of consistency in the administrative process lead us to conclude that in a termination proceeding, once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. Such a presumption will help avoid the disconcerting picture presented by the triple administrative flip-flop in this case.

*Kuzmin v. Schweiker, supra*, 714 F.2d at 1237 *quoted in De Leon v. Heckler, supra*,

U.S.C. § 423. *See* 42 U.S.C. § 1383(c)(3). Consequently, "cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C.

§ 1382c(a)(2)." *Hankerson v. Harris*, 636 F.2d 893, 895 n. 2 (2d Cir.1980). *See also Rivera v. Harris*, 623 F.2d 212, 216 n. 4 (2d Cir.1980).

at 937. *See also Parente v. Heckler, supra,* at 735 F.2d 744; *Simpson v. Schweiker, supra,* 691 F.2d at 969.

■■■ In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience. *Ferraris v. Heckler, supra,* 728 F.2d at 585; *Carroll v. Secretary of HHS,* 705 F.2d 638, 642 (2d Cir. 1983); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of HEW, supra,* 463 F.2d at 41 n. 2. These factors need not be given equal weight. The expert opinion of the claimant's treating physician is entitled to particular weight, and "in the absence of substantial contradictory evidence, the opinion of th' claimant's treating physician is binding on the Secretary." *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); *see Ferraris v. Heckler, supra,* 728 F.2d at 585; *Donato v. Secretary of HHS,* 721 F.2d 414, 419 (2d Cir.1983); *Rivera v. Schweiker, supra,* 717 F.2d at 723; *Carroll v. Secretary of HHS, supra,* 705 F.2d at 642; *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *Eiden v. Secretary of HEW,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano, supra,* 572 F.2d at 912. Moreover, in making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing. *See Ferraris v. Heckler, supra,* 728 F.2d at 585; *Kerner v. Flemming,* 283 F.2d 916, 921 (2d Cir. 1960); *Deutsch v. Harris,* 511 F.Supp. 244, 249 (S.D.N.Y.1981).

■■■ The Secretary has the duty of making the determination of disability under the principles set out above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has ap-plied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Bluvband v. Heckler, supra,* 730 F.2d at 891; *Aponte v. Secretary of HHS,* 728 F.2d 588, 591 (2d Cir.1984); *Donato v. Secretary of HHS, supra,* 721 F.2d at 418; *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (*per curiam*). Thus, absent legal error by the Secretary, her decision cannot be set aside if it is supported by substantial evidence. *Bluvband v. Heckler, supra,* 730 F.2d at 891; *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir. 1983); *Aubeuf v. Schweiker, supra,* 649 F.2d at 112; *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also De Leon v. Secretary of HHS, supra,* 734 F.2d at 933; *Donato v. Secretary of HHS, supra,* 721 F.2d at 418; *Parker v. Harris, supra,* 626 F.2d at 231–32.

## II.

■■■ Applying these principles to the instant case, the Court concludes that the Secretary's decision terminating plaintiff's disability benefits must be reversed because the Secretary failed to apply the correct legal standards in evaluating the evidence with respect to plaintiff's condition. In particular, the ALJ failed to apply the medical improvement standard recently adopted by the Second Circuit to consider the effect of plaintiff's impairments in combination; or to give proper weight to the testimony of Dr. Daun, plaintiff's treating physician. "Each of these errors ... constitute [sic] an adequate ground for reversal." *De Leon v. Heckler, supra,* 734 F.2d at 931. *See also Romero v. Heckler, supra,* 586 F.Supp. at 846.

## A. *The Relevant Medical Evidence*

The relevant medical evidence in the instant case is contained in the reports of several doctors, including plaintiff's treating physician, Dr. Greta Daun, and two consultative physicians, Drs. Milan Kutanovski and Antonio De Leon, who examined plaintiff on behalf of the Social Security Administration. Medical advice was also rendered by Drs. S. Suitor and K. Chu, although it does not appear that either physician ever examined plaintiff.

Dr. Daun, a board certified internist, had been treating plaintiff on a regular basis since October 1979 for chronic bronchitis, hypertension with left ventricular hypertrophy on ECG, cataracts, chronic arthritis, chronic skin rash and periodic renal failure.[4] She had also been treating plaintiff on a weekly basis for counselling in connection with both plaintiff's alcoholism and his depression and anxiety. In a report dated March 30, 1983, Dr. Daun indicated that plaintiff suffered from, among other ailments, hypertension, emphysema, chronic bronchitis, chronic arthritis and cataracts. She reported that plaintiff could stand continuously, for only ten (10) minutes and could sit continuously for merely twenty (20) minutes. Dr. Daun also indicated that plaintiff needs to lie down during the day to relieve the pains in his legs, and that he can walk only three (3) blocks without stopping. According to Dr. Daun's report, plaintiff can lift up to ten (10) pounds and he experiences problems standing, sitting, squatting, kneeling, bending, pushing, pulling or otherwise manipulating his limbs because of his arthritis. Plaintiff's vision is also impaired as a result of cataracts. (Tr. 128–30). Dr. Daun also reported on plaintiff's psychiatric condition. She indicated that plaintiff was suffering from depression and anxiety, and that plaintiff's psychiatric condition exacerbated the pain caused by plaintiff's physical ailments. (Tr. 133). In response to a "Questionaire as to Residual Functional Capacity: Psychiatric Impairment," Dr. Daun indicated that plaintiff is severely impaired in his ability to perform either simple or complex tasks in a full-time work setting, and that his condition seriously affects his ability to perform work requiring either frequent or minimal contact with others. Dr. Daun also reported that plaintiff's condition seriously constricts plaintiff's interests and moderately impairs plaintiff's ability to function in other respects. (Tr. 134–35).

Drs. Kutanovski and De Leon each examined plaintiff on January 21, 1983 at government expense. After examining plaintiff's cervical and lumbar spine and his upper and lower extremities, Dr. Kutanovski concluded that plaintiff suffered from degenerative osteoarthritis of both knees and chronic lumbosacral strain. In addition, Dr. Kutanovski found: status-post open reduction and internal fixation/fracture of the left humerus, acromio left radius and possible left olecranon, as well as, fixed pronation of the left forearm, and status-post intraarticular fracture of the left knee (Tr. 110–11). On the same day, Dr. De Leon examined plaintiff and concluded that plaintiff suffered from arthralgia of the back, knees and elbows. Dr. De Leon also noted plaintiff's history of high blood pressure and emphysema. (Tr. 114–116). Neither Dr. Kutanovski nor Dr. De Leon evaluated plaintiff's residual functional capacity to engage in substantial gainful activity, nor did they express an opinion as to whether plaintiff could resume his former work as a salad maker or engage in some other form of employment.

On January 29, 1983, Dr. Suitor, a state review physician concluded on the basis of plaintiff's file that there were no restrictions on plaintiff's residual functional capacity from the orthopedic standpoint. (Tr. 122). In a "Residual Functional Capacity Assessment" dated February 8, 1983, Dr. Suitor concluded that plaintiff could lift ten (10) pounds frequently and twenty (20) pounds occasionally; that he could stand, walk or sit about six (6) hours; and that plaintiff could engage in unlimited pushing and pulling. However, he concluded that plaintiff suffered from other limitations.

---

**4.** Plaintiff's left kidney had been surgically removed in 1970.

(Tr. 124). On January 31, 1983, Dr. Chu, another state review physician whose medical advice had been solicited by the Secretary, opined that plaintiff retained the residual functional capacity for medium work from the cardiac standpoint. (Tr. 123). Neither Dr. Suitor nor Dr. Chu evaluated plaintiff's residual functional capacity in light of the aggregate of plaintiff's impairments, nor did they express an opinion with respect to plaintiff's overall physical and psychological condition. *See infra* at 540–541.

### B. *The Determination of the Secretary*

■ The regulations promulgated by the Secretary under which a claim of continuing disability is to be determined require a five-stage evaluation process. As the Second Circuit has explained:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker, supra,* 675 F.2d at 467. *See also* 20 C.F.R. §§ 404.1520, 416.-920.

In the instant case, the Secretary determined that plaintiff suffered from a "severe impairment" within the meaning of the Act and implementing regulations. But the Secretary determined that "at least since February 1983 he has not had an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 14). Turning to the relevant medical evidence, the Secretary acknowledged the conclusions of Dr. Daun with respect to plaintiff's mental and physical condition, but rejected them out-of-hand. The Secretary, through the ALJ, opined that

"Dr. Daun is not a psychiatrist and her psychiatric ratings appear completely without foundation. She gives no clinical findings to support any of her diagnoses.... I give no weight to Dr. Daun's later advocacy reports. I find the 2 consultative reports thorough and fair and give them great weight." (Tr. 14).

On the strength of the consultative reports of Drs. Kutanovski and De Leon, the Secretary concluded that plaintiff's impairments do not prevent plaintiff from performing his past relevant work as a salad maker. (Tr. 15). The Secretary therefore found that plaintiff's disability had ceased in February 1983, and concluded that plaintiff's "eligibility for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act ended effective April 1983." *Id.*

The Secretary's decision in the instant case is premised on the unsupported assertion by the ALJ that plaintiff "has a severe impairment but is capable of doing his former work as a salad maker." (Tr. 14). Crucial to such a determination, however, is an evaluation of the specific physical and mental demands of plaintiff's past relevant work, and a determination that plaintiff's condition does not prevent him from performing the specific tasks involved in such employment. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). Such analysis, however, is absent from both the decision of the ALJ and its affirmance by the Appeals Council. Moreover, in reaching her determination, the Secretary relied exclusively on the con-

sultative reports of two physicians, each of whom saw plaintiff on only one occasion, and neither of whom addressed either plaintiff's psychiatric condition or the effect of the aggregate of plaintiff's impairments on plaintiff's residual functional capacity. In fact, although both Drs. Kutanovski and De Leon indicated that plaintiff suffered from a severely impairing condition, neither doctor expressed any opinion as to plaintiff's residual functional capacity to engage in substantial gainful activity.

Thus, "[i]t is very debatable whether there was substantial evidence on the record to support the ALJ's finding that [plaintiff] is not disabled, an issue we need not reach but about which we have grave doubts, especially in light of" the Secretary's failure to apply the correct legal standards in evaluating the evidence of plaintiff's disabilities. *Parente v. Heckler, supra*, 735 F.2d at 744.

#### C. *The Medical Improvement Standard*

■ Although the Secretary is authorized to terminate a claimant's benefits if the claimant's disability has ceased, as the Second Circuit has recently explained, "the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled...." *De Leon v. Heckler, supra*, 734 F.2d at 936. *See supra* at 535–536. In the instant case, the Secretary failed to make a finding concerning, or even to address, the question of whether plaintiff's disabling condition had improved to the point where he is able to engage in substantial gainful activity within the meaning of the Act. The record before this Court is devoid of any attempt by the Secretary to reconcile the earlier determination that plaintiff was disabled with the Secretary's current conclu-

sion that plaintiff is no longer eligible for disability benefits. Nor did any of the examining or consulting physicians document any improvement in plaintiff's condition since November 1978, when he was determined to be disabled.[5] In fact, there is no mention anywhere in the administrative record of plaintiff's earlier condition and its effect on plaintiff's ability to engage in substantial gainful activity, either in the past or at present. In sum, the evidence in the record does not indicate that plaintiff's condition has improved to the point that he is no longer disabled or that the Secretary's initial finding of disability was erroneous.

It is abundantly clear from the administrative record that the Secretary made absolutely no determination that there was any improvement or even change in [plaintiff's] physical or psychological condition, but merely conducted what amounted to a de novo hearing on the question of disability.

*Parente v. Heckler, supra*, 735 F.2d at 744. Accordingly, the Secretary has failed to rebut the presumption of plaintiff's continuing disability, and her decision terminating plaintiff's disability benefits lacks the requisite support by substantial evidence. *See, e.g., Id.; De Leon v. Heckler, supra*, 734 F.2d at 936; *Velazquez v. Heckler, supra*, 586 F.Supp. at 127.

■ Acknowledging her failure to apply the medical improvement standard adopted by the Second Circuit in *De Leon* and reaffirmed in *Parente*, the Secretary requests that the instant case be remanded for further administrative proceedings consistent with the Second Circuit's opinions in those two cases. However, as another judge of this Court has recently explained, "[i]n a termination case such as this, where the Secretary has failed to meet the burden of the medical improvement standard, the

---

5. In fact, the reports of Dr. Daun, plaintiff's treating physician, appear to support plaintiff's claim that plaintiff's condition has deteriorated since November 1978. In his decision of September 2, 1983, the ALJ acknowledged the medical reports supporting plaintiff's claims of deterioration, but summarily rejected such evidence:
"Dr. Daun herself wrote in December 1982 that claimant experienced pain only if he

failed to take his medication, and gave claimant a clean bill of health psychologically. Since then she appears to have become claimant's advocate, and her statements appear to be uncritical repetitions of his..." I give no weight to Dr. Daun's later advocacy reports. (Tr. 14). See *infra* at 540.

principles of fairness and administrative consistency considered in *De Leon* require a reversal rather than a remand of the Secretary's decision to spare the claimant the frustration and uncertainty of further administrative proceedings." *Velazquez v. Heckler, supra,* 586 F.Supp. at 127 (Sweet, J.). *See also Parente v. Heckler, supra,* 735 F.2d at 745 ("first to classify a claimant as disabled and then to draw precisely the opposite legal conclusion without substantial evidence of improvement violates not only the termination statute but basic considerations of fairness"); *De Leon v. Heckler, supra,* 734 F.2d at 937 (quoting *Kuzmin v. Schweiker, supra,* 714 F.2d at 1237); *Romero v. Heckler, supra,* 586 F.Supp. at 847.

### D. *Combination of Impairments*

■ The Secretary's failure to consider the effect of the combination of plaintiff's impairments on plaintiff's ability to engage in substantial gainful activity supplies an additional reason for reversing the Secretary's decision in the instant case. As the Second Circuit explained in *De Leon,* "[i]t is the clear rule in this circuit that 'all complaints ... must be considered together in determining ... work capacity.' *Gold v. Secretary, supra,* 463 F.2d at 42 (quoting *Burns v. Celebrezze,* 234 F.Supp. 1019, 1020 (W.D.N.C.1964); *see also Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975)." *De Leon v. Heckler, supra,* 734 F.2d at 937 (ellipses in original). *See also, Crespo v. Harris,* 484 F.Supp. 1167, 1174 (S.D.N.Y.1980); *Storyk v. Secretary of HEW,* 462 F.Supp. 152, 156 (S.D.N.Y.1978).

In the instant case, the record reveals that plaintiff suffers from a number of physical and psychological impairments, some of which formed the basis of the initial determination that he was disabled. As noted above, the Secretary's original determination that plaintiff was disabled was based on plaintiff's medical condition in November 1978. At that time he suffered from arthritis in both legs, emphysema, high blood pressure, alcoholism, chronic bronchitis, loss of the left kidney, renal problems and fixed pronation of the left

arm. Plaintiff has advanced evidence that, in addition to these ailments, he now suffers from osteoarthritis in both knees, cataracts, spasms of the spine, chronic skin rash, depression and anxiety, and dependence on a back brace. (Tr. 62–64, 104–05, 111–12, 116, 128, 133). Nevertheless, neither the ALJ nor the Secretary analyzed the effect of the combination of some or all of these impairments on plaintiff's ability to engage in substantial gainful activity. For this reason, too, the Secretary's decision must be reversed. *See, e.g., De Leon v. Heckler, supra,* 734 F.2d at 937. *Romero v. Heckler, supra,* 586 F.Supp. at 847.

### E. *Testimony of Plaintiff's Treating Physician*

■ The Secretary's failure to give proper weight to the opinions of Dr. Daun provides yet a third reason for this Court to reverse the decision of the Secretary terminating plaintiff's disability benefits. In finding that plaintiff retained the residual functional capacity to resume his prior work as a salad maker, the Secretary relied exclusively on the evidence presented by the consultative physicians. The determination of the Secretary summarily rejecting the expert opinion of Dr. Daun, plaintiff's treating physician, and endorsing the reports of the two consultative physicians is patently contrary to the well-settled principles governing disability benefits proceedings. As the Second Circuit has recently explained, "[i]t is well-established in this circuit that '[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.'" *Bluvband v. Heckler, supra,* 730 F.2d at 892 (quoting *Bastein v. Califano, supra,* 572 F.2d at 912). *See also, De Leon v. Heckler, supra,* 734 F.2d at 937. ("The cases in this circuit are almost legion where the court has reversed administrative findings due to the factfinder's failure to give appropriate weight to the expert opinion of the treating physician"); *Donato v. Secretary of HHS, supra,* 721 F.2d at 419 ("we have regarded a treating physician's diagnosis, to the extent it is uncontradicted as binding"); *Rivera v. Schweiker, supra,* 717

F.2d at 723 ("expert opinion of a treating physician on the subject of disability is binding on the Secretary unless substntial evidence is presented to the contrary"); *Carroll v. Secretary of HHS*, 705 F.2d 638, 642 (2d Cir.1983) ("The opinion of a treating physician is entitled to considerable weight and in the absence of contradictory evidence is binding on the Secretary") (*citing Parker v. Harris, supra*, 626 F.2d at 231; *Rivera v. Harris, supra*, 623 F.2d at 216); *Aubeuf v. Schweiker, supra*, 649 F.2d at 112 (quoting *McLaughlin v. Secretary of HEW*, 612 F.2d 701, 705 (2d Cir. 1980) (quoting *Bastien v. Califano, supra* )); *Singletary v. Secretary of HEW*, 623 F.2d 217, 219 (2d Cir.1980); *Eiden v. Secretary HEW, supra*, 616 F.2d at 64 ("we have repeatedly stated that when 'no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary' ") (quoting *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir.1979) (*per curiam* ); *Gold v. Secretary of HEW, supra*, 463 F.2d at 42. Moreover, it is equally well-established that there is no requirement that the physician's medical testimony "be supported by 'objective' clinical or laboratory findings." *Bluvband v. Heckler, supra*, 730 F.2d at 893; *Eiden v. Secretary of HEW, supra*, 616 F.2d at 65 (quoting *Cutler v. Weinberger, supra*, 516 F.2d at 1287).

Thus, in the instant case, the Secretary failed to accord sufficient and proper weight to the expert opinion of Dr. Daun concerning plaintiff's physical and mental condition, even though Dr. Daun had been treating plaintiff on a regular and on-going basis for several years. The Secretary's rejection of the unrefuted medical evidence contained in Dr. Daun's reports is in direct contradiction with the overwhelming weight of precedent in the Second Circuit, and constitutes yet another ground for reversal of the Secretary's decision. *See, e.g., De Leon v. Heckler, supra*, 734 F.2d at 937.

## CONCLUSION

The Secretary's determination that plaintiff is not entitled to continued disability payments because he is no longer disabled is premised on erroneous legal principles, and cannot stand. Accordingly, plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., is granted, and the decision of the Secretary is reversed. Plaintiff is hereby reinstated as eligible for disability benefits retroactive to the date of termination, April 1983.

It is so ordered.